Michael SHUB, Plaintiff,

v.

Joseph N. HANKIN, individually and in his capacity as President of Westchester Community College, Westchester Community College, and the County of Westchester, Defendants.

No. 94 Civ. 6319 (CLB).

United States District Court, S.D. New York.

Nov. 30, 1994.

Jonathan Lovett, Lovett & Gould, White Plains, NY, for plaintiff.

Irma Cosgriff, Westchester County Attys. Office, White Plains, NY, for defendants.

### MEMORANDUM AND ORDER

BRIEANT, District Judge.

Plaintiff, Michael Shub, an Associate Professor of Mathematics at Westchester Community College, filed this action pursuant to

42 U.S.C. § 1983 alleging that his rights under the First and Fourteenth Amendments to the United States Constitution were violated by Defendants Joseph Hankin, individually and as President of Westchester Community College, Westchester Community College ("the College"), and the County of Westchester (collectively "Defendants"). Supplemental claims under New York law are also asserted.

Plaintiff charges that he was denied procedural due process when he was suspended improperly from teaching duties, pending the outcome of an investigation of possible sexual harassment of female students, and other conduct unbecoming a member of the College staff. Plaintiff seeks compensatory damages and punitive damages, as well as attorney fees and costs.

Pursuant to Fed.R.Civ.P. 12(b)(6), Defendants have moved to dismiss the complaint for failure to state a claim. The facts set forth below are uncontested and appear from the Complaint as amplified at the hearing held October 28, 1994 (see transcript) and by affidavits submitted by the parties.

Plaintiff is a tenured Associate Professor of Mathematics at Westchester Community College, and as such is a member represented by the Westchester Community College Federation of Teachers, a collective bargaining unit.

In September, 1989, Plaintiff was charged with conduct unbecoming a member of the staff. The 1989 charges involved allegations of sexual harassment of female students. By decision dated May 9, 1990, a neutral arbitrator, Howard C. Edelman, Esq., appointed pursuant to the provisions of the Collective Bargaining Agreement between Westchester County and the Westchester Community College Federation of Teachers ("Collective Bargaining Agreement") (Def.Ex. A. to Motion), determined that Plaintiff was guilty of conduct unbecoming a member of the staff. As a result, Plaintiff was suspended from teaching for one semester.

On July 1, 1994, Plaintiff was served with Notice of Charges dated June 28, 1994, again for conduct unbecoming a member of the staff. The current allegations involve improper contacts with students, including (1) inviting a female student for a drink and telling her that he wanted to see her off campus; (2) inviting a female student for a drink, asking questions about her personal life, and making remarks about her perfume; (3) inviting a female student for a drink; (4) requesting home telephone numbers of students and inviting them to go sailing on his boat; (5) sexually harassing a female student by inviting her for a drink, touching her, asking her questions about her personal life, and raising one of her grades without justification; (6) keeping objects in his office suggesting that female students were more likely than male students to receive an "A"; (7) informing a female student that she was "not [his] type"; (8) giving preferential treatment to one female student while refusing to help another female student when they both went to his office for help with their course work.

On August 23, 1994, Plaintiff was suspended from classroom teaching, pending the outcome of the charges, and was informed that for the Fall, 1994 semester, he will be reassigned to "several curriculum/syllabus projects," apparently the academic equivalent of the rubber gun squad,[1] with no diminution in his basic salary.

The Complaint in the instant case seeks to (1) enjoin Defendants from prosecuting Plaintiff on the 1994 disciplinary charges pursuant to the Collective Bargaining Agreement; (2) set aside and void the 1990 disciplinary conviction;[2] (3) award compensatory damages, punitive damages and attorneys fees.

This Court recognizes that on a motion of this sort, we are "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman*

---

1. Police jargon for officers deprived of gun and badge and assigned to limited duty.

2. This claim would seem to be time barred, although these prior proceedings may have some evidentiary value in considering the 1994 claim. See new Rule 413 Fed.R.Evid. not yet in effect, contained in the Violent Crime Control and Enforcement Act of 1994, Pub.L. No. 103–322.

*v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). The court must accept as true the factual allegations made in the Complaint, as amplified by the affidavits and documents received without objection, and concessions of fact made at the October 28, 1994 hearing. The Complaint should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

## The Issue Presented

Plaintiff contends that he was denied procedural due process when Defendants brought charges pursuant to the College's Collective Bargaining Agreement for "conduct unbecoming," which included accusations of sexual harassment, rather than invoking the "Westchester Community College Procedure on Discrimination" and the "Westchester Community College Policy and Procedure on Sexual Harassment" (collectively "the College Policy") (Def.Ex. E to Motion), established by the College pursuant to the United States Code of Federal Regulations, 34 C.F.R. § 106.8 *et seq.* (*see infra*). Plaintiff argues that Defendants must proceed under the College Policy rather than the Collective Bargaining Agreement.

■ A tenured public employee has a property right in continued employment and cannot be *terminated* without first receiving notice and an opportunity to be heard. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The law is less clear concerning personnel actions short of termination. *See, e.g., Maples v. Martin,* 858 F.2d 1546, 1550 (11th Cir.1988) (no property interest when tenured university professors transferred from mechanical engineering department to other engineering department with no diminution in salary or rank); *Garvie v. Jackson,* 845 F.2d 647, 651 (6th Cir.1988) (no property interest when university department head reassigned to regular teaching duties); *Winkler v. County of DeKalb,* 648 F.2d 411 (5th Cir. 1981) (protectible property interest where county engineer demoted to position of greatly reduced responsibilities).

Our Court of Appeals has not addressed the issue of whether temporary suspension of a tenured professor's teaching duties constitutes deprivation of a property right. However, in *Ezekwo v. NYC Health & Hospitals Corp.,* 940 F.2d 775, 783 (2d Cir.), *cert. denied,* 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991), the court held that a physician possessed a property interest in the opportunity to serve as Chief Resident— withdrawal of which was an action short of termination. The court recognized that "not every contractual benefit rises to the level of a constitutionally protected property interest." *Id.* at 782. "In determining which interests are afforded such protection, a court must look to whether the interest involved would be protected under state law and must weigh 'the importance to the holder of the right.'" *Id.* The court then determined that the policy and practice of the institution was well-established and that the right had important professional and financial value to the plaintiff.

Here, Plaintiff alleges that the suspension of his teaching duties pending a disciplinary investigation and hearing deprived him of a significant source of compensation because he was precluded from teaching "overload" courses, voluntarily, for which extra pay is awarded. Plaintiff also claims and the Court assumes that revelation of the sexual harassment charges to the college community stigmatized him.

Even assuming that the temporary suspension of Plaintiff's teaching duties under the circumstances of this case constitutes deprivation of a property right, Plaintiff has failed to show that the post-suspension due process to be given by Defendants in compliance with the Collective Bargaining Agreement violates the Fourteenth Amendment's guaranty of due process.

■ In order to determine whether a pre-deprivation hearing, as opposed to a post-deprivation hearing, is due, the court must balance the private interest against the government interest. *Matthews v. Eldridge,* 424 U.S. 319, 340, 96 S.Ct. 893, 905, 47 L.Ed.2d 18 (1976). Where a valid government interest militates toward immediate ac-

tion, a post-deprivation hearing is sufficient to satisfy due process. *Ezekwo*, 940 F.2d at 785. (In situation where "the residency program administrators believed that plaintiff presented a threat to patient safety.... the program administrators would be justified in immediately removing [plaintiff] subject to some post-removal review.").

Here, the College reasonably believed that Plaintiff presented a threat to the well-being of its students. Sexual harassment damages the educational environment and destroys the trust that is a necessary component in the teacher-student relationship. The college administrators were justified in taking a temporary measure—reassigning this allegedly recidivist teacher pending the outcome of disciplinary proceedings—in order to protect the well-being of the student body.

■ The only remaining issue here as presented by Professor Shub is a pure question of law: was Plaintiff denied procedural due process because Defendants followed the agreed due process procedures contained in the Collective Bargaining Agreement rather than the due process procedures which the College had adopted in accordance with 34 C.F.R. § 106.8(b) for sexual harassment.

■ This Court concludes that there is no requirement pursuant to the Fourteenth Amendment, that a specific procedure be used, nor is a plaintiff entitled to the procedure of his or her choice. Plaintiff is entitled only to notice and "an opportunity [to be heard] ... at a meaningful time in a meaningful manner." *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1970). It is not a Constitutional violation if a defendant chooses to follow one established internal procedure, which provides due process, rather than utilizing a different internal procedure.

Plaintiff argues that in all cases where sexual harassment is implicated, the College Policy, established pursuant to 34 C.F.R. § 106.8 (effective July 1, 1975), must be exhausted before recourse to the due process granted in the Collective Bargaining Agreement. Under 34 C.F.R. § 106.8, a college receiving federal financial assistance is required to adopt and make available a grievance procedure providing for prompt and equitable resolution of student and employee complaints which allege sexual harassment. 34 C.F.R. § 106.8; 34 C.F.R. 106.2(g) (the "CFR") (college receiving federal financial assistance must comply with Section 106.8).[3]

As noted earlier, at a date not disclosed, and intending to comply with the CFR, the College Board of Trustees and President Hankin adopted the "Westchester Community College Procedure on Discrimination" and the "Westchester Community College Policy and Procedure on Sexual Harassment".

The "Westchester Community College Procedure on Discrimination" requires:

A student who wishes to make a complaint against a faculty member ... regarding alleged discrimination based on ... sex ... should register that complaint with the Office of Student Affairs.... A complaint about sexual harassment would be referred to the sexual harassment officer.

In all cases, the first step would be to attempt to resolve the complaint informally. If a resolution satisfactory to both the complainant and respondent is reached within fourteen (14) calendar days through the efforts of the Director of Student Affairs, the appropriate college official, or other such designated person, the case shall be closed. A written notice to that effect will be sent to the complainant and to the respondent.

3. Section 106.8 provides:
106.8 Designation of responsible employee and adoption of grievance procedures.
  (a) Designation of responsible employee. Each recipient shall designate at least one employee to coordinate its efforts to comply with and carry out its responsibilities under this part, including any investigation of any complaint communicated to such recipient alleging its noncompliance with this part. The recipi-

ent shall notify all its students and employees of the name, office address and telephone number of the employee or employees appointed pursuant to this paragraph.
  (b) Complaint procedures of recipient. A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

If no formal resolution is possible, and the student wishes to pursue the complaint, a grievance must be submitted in writing. Such formal grievance must be filed within forty-five (45) calendar days following the alleged discriminatory act. Grievances must be filed with the Office of Student Affairs.

(Def.Ex. E at 150.)

The "Westchester Community College Policy and Procedures on Sexual Harassment" provides:

### SEXUAL HARASSMENT POLICY

.    .    .    .    .

1. This sexual harassment policy applies to all college (faculty, administrators and staff) and students.

.    .    .    .    .

4. Any employee who is found to have committed an act of sexual harassment *may* be subjected to disciplinary action as provided by the college operating procedures. . . .

(Def.Ex. E. at 164–65.) (emphasis added). This Court concludes that the use of the term "may" establishes that the College Policy is not the exclusive remedy for sexual harassment, and "college operating procedures" referred to therein includes as well the due process contained in the Collective Bargaining Agreement. Furthermore, neither Paragraph 4 nor any other document cited to this Court requires exhaustion of the College Policy before recourse to the Collective Bargaining Agreement. Neither 34 C.F.R. § 106.8, nor the College Policy established thereunder, purports to provide the sole method by which the College administration may respond to or discipline sexual harassment. Neither the CFR nor the College Policy precludes action by the College pursuant to the Collective Bargaining Agreement.

A reading of the College Policy and C.F.R. § 106 *et seq.* shows a clear intention to provide a remedy for the benefit of *students and employees,* cumulative to other available remedies. Nothing therein derogates from the power and duty of the College administration to respond to sexual harassment. By contrast, according to Defendants, "[t]he only procedure available to the *College* for removing or suspending plaintiff is the procedure contained in the Collective Bargaining Agreement." *Memorandum of Law in Support of Defendants' Motion to Dismiss* 8. Defendants contend that the College Policy only "appl[ies]" when students and/or employees wish to make a complaint," and not when the purpose of the proceeding is to remove or suspend an employee for conduct unbecoming a member of the staff, which happens to involve sexual harassment.

Implicit in this case is the absence of a "registered" or written complaint by any or all the students allegedly harassed. The Court sees no reason of public policy which requires the College to await the "registering" of a complaint of sexual harassment before it may respond to the perceived situation involving such a serious distortion of academic life.[4] Response by temporary suspension, followed by compliance with the procedures under the Collective Bargaining Agreement constitutes due process.

The Collective Bargaining Agreement provides:

1. Persons having tenure under the provisions of this section shall not be removed or suspended from the permanent staff unless the following procedure is followed:

1. Written charges are served under one or more of the following reasons:

   a) Incompetent service

   b) Neglect of duty

   c) Conduct unbecoming a member of the staff.

2. Removal or suspension of a person on tenure may be taken up as a grievance directly at Step 2 of the grievance procedure provided under this Agreement.

---

4. Apparently the allegations against Professor Shub are not limited to sexual harassment. For example, raising a grade unjustifiably, even if motivated by sex, has ramifications for the College far beyond sexual harassment. It dilutes the grades earned by others and threatens the academic integrity of the entire College.

(Def.Ex. A, Collective Bargaining Agreement, Section Three, 3.7(i), at 9.)

Step 2 provides:

1. In the event that the grievance is not adjusted under Step 1, the faculty member of the Union at the employee's request may within two (2) weeks from the date of the written answer take up such grievance with the President, his designee, or the College Grievance Board at the discretion of the College administration, who will schedule an informal hearing, when requested, within two weeks thereafter.

2. The President or his designee, after a formal hearing where requested, at which the faculty member and his representative may appear and present oral and written statements or arguments, shall answer in writing within two (2) weeks of receipt of the grievance, or two (2) weeks after the hearing, if later.

(Def.Ex. A, Section Seven, 7.4(b) at 27.)

Should compliance with Step 2 fail to resolve the grievance, Step 3 authorizes arbitration under the Voluntary Rules of the American Arbitration Association:

1. A grievance which is not adjusted under Step 2, may at the request of the College or the Union within one week of the Step 2 answer, be promptly submitted to arbitration under The Voluntary Labor Arbitration Rules of the American Arbitration Association.

(*Id.* at 28.) The Agreement also guarantees: [A]ll parties shall have a fair and full opportunity to present any and all relevant information, evidence and testimony and shall be entitled to a full and fair hearing. Due process and a fair and full hearing shall include the right to cross examination of witnesses, and written notification of the final disposition of the grievance.

(Def.Ex. A., Section Seven, 7.2(e) at 26.)

Defendants assert, without contradiction, that they are complying with and intend to comply with the Collective Bargaining Agreement, specifically, (1) Plaintiff was given written notice of the charges by the Notice of Charges served on Plaintiff on July 1, 1994; and (2) the Notice of Charges states that a hearing is contemplated:[5]

You are entitled to every right granted to you pursuant to the Agreement between the County of Westchester and the Westchester Community College Federation of Teachers. In addition, should the appropriate time arrive and if your collective bargaining representative does not request an arbitration, the Charging Party will request an arbitration.

(Def.Ex. C at 2.)

■ Plaintiff does not appear to challenge the constitutionality of the grievance procedures pursuant to the Collective Bargaining Agreement. However, he argues that the grievance procedure does not apply to his situation because the Collective Bargaining Agreement excludes disciplinary actions from its definition of a grievance:

*7.3 Grievance Defined:*

a. "Grievance" shall mean any claimed violation, misrepresentation or inequitable application of this contract, or of the existing laws, rules, procedures, regulations, administrative orders or work rules of the County or the College which relate to wages, hours, or working conditions; provided, however, that such term shall not include *any matter involving the renegotiation of salary schedule (prior to the opening of contract negotiations), retirement benefits, disciplinary proceedings or any matter which is otherwise reviewable under section 6206 [sic] of the State of New York Education Law.*[6]

(Def.Ex. A, Section 7.3(a), at 26.)

However, Section 3.7(i) of the Collective Bargaining Agreement allows "[r]emoval or

---

5. No hearing has been held to date because at Plaintiff's request on October 28, 1994, this Court issued a stay pending further order of the Court, and the resolution of the motion to dismiss.

6. Undoubtedly, this citation to Section 6206 of the State of New York Education Law is a typographical error and should be read as 63 06. Section 6206 governs the powers and duties of the boards of trustees of the City University of New York ["C.U.N.Y."], whereas Section 6306 governs the powers and duties of the boards of

suspension of a person on tenure may be taken up as a grievance." (Def.Ex. A, Section Three, 3.7(i), at 9.)

These two provisions may appear to contradict each other. The obvious and correct way to reconcile them is by reading Section 7.3(a) of the Collective Bargaining Agreement as excluding only those disciplinary proceedings which are "reviewable under section 6306 of the State of New York Education Law," which establishes the powers and duties of the boards of trustees of community colleges. *See* Education Law § 6306. Under this interpretation, the grievance procedure would not apply in any matter where the authority of the board of trustees is disputed pursuant to Education Law § 6306. *See, e.g., Board of Trustees v. Faculty Interest Com.,* 47 A.D.2d 975, 366 N.Y.S.2d 683, 684 (3d Dept.1975) (finding that grievance procedure did not apply to dispute about salary schedule because contract could come into existence only upon approval of the Board of Supervisors as required pursuant to Education Law § 6306, subd. 2). Here, the power of the Board of Trustees or the President of the University to suspend a tenured professor is not challenged pursuant to Education Law § 6306. Accordingly, the exclusion in Section 7.3(a) of the Collective Bargaining Agreement does not apply.

This Court concludes that Defendants are justified in acting pursuant to the Collective Bargaining Agreement in the present situation, and may do so notwithstanding Plaintiff's claim of retaliation for "Plaintiff's exercise on campus of his rights of free speech and association including *inter alia* Plaintiff's union activities and membership on a committee which investigated allegation of misappropriation of public funds by Hankin." Complaint ¶ 13. *See Ezekwo v. NYC Health & Hospitals Corp.,* 940 F.2d 775, 780–81 (2d Cir.1991) (to prevail on first amendment retaliation claim, a plaintiff must show that "the speech played a substantial part in the employer's adverse employment action; *i.e.,*

that the adverse action would not have occurred but for the employee's protected actions.") (emphasis in the original), *cert. denied,* 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991). *FSK Drug Corp. v. Perales,* 960 F.2d 6 (2d Cir.1992) ("to state a claim for selective application of a facially lawful regulation, a plaintiff must show selective treatment was motivated by the intention to discriminate to punish exercise of constitutional rights."). The impartiality of the arbitrator in the 1990 proceedings has not been questioned and removes any taint from the fact that Defendant Hankin has previously charged Professor Shub with sexual harassment. The grievance for the 1994 charges, if it ever reaches step 3 also will be heard by an impartial arbitrator.

█ Similarly, no valid claim is stated for denial of equal protection in that the College may have processed complaints against others under the College Policy. As noted earlier, both procedures are equally available to the College, and the charges in this case extend to grade dilution, a form of "unbecoming" conduct which goes beyond simple lewdness. Any claim for selective enforcement would be available in any event for consideration by the impartial arbitrator.[7]

For the foregoing reasons, the motion to dismiss the Complaint is granted. The stay granted on October 28, 1994 is vacated. The Clerk shall enter a final judgment.

SO ORDERED.

---

trustees for community colleges. The two provisions are congruent. Because the college here is a community college, not C.U.N.Y., this Court reads the Collective Bargaining Agreement as referring to Section 6306 of the Education Law.

7. The issue of whether Defendant Hankin engaged in a "witchhunt" against Plaintiff was litigated during the 1990 arbitration. (Dcf.Ex. B at 11–13 to Motion.)