Albert GREENWOOD, M.D.,
Plaintiff–Appellant,

v.

The State OF NEW YORK, Office of Mental Health; Manhattan Psychiatric Center; Gabrial Koz, M.D.; Michael H. Ford, M.D.; Yves Chenier, M.D.; Miodrag Ristich, M.D.; Willy Mautner, M.D.; Kenneth Kahaner, M.D.; and Ruby Cohen Pasini, C.S.W., Defendants–Appellees.

No. 96–9261.

United States Court of Appeals, Second Circuit.

Argued Nov. 16, 1998.

Decided Dec. 11, 1998.

John M. McLaughlin, Auburndale, NY, for Plaintiff–Appellant.

Thomas B. Litsky, Assistant Attorney General of New York, Albany, N.Y. (Dennis Vacco, Attorney General of New York, John W. McConnell, Deputy Solicitor General, Michael Belohlavek, Assistant Attorney General, on the brief), for Defendants–Appellees.

Before: CALABRESI, SACK, and SOTOMAYOR, Circuit Judges.

CALABRESI, Circuit Judge:

Plaintiff-appellant Albert Greenwood appeals from a judgment dated August 29, 1996 in the United States District Court for the Southern District of New York (Loretta A. Preska, *District Judge*). The district court granted summary judgment to the defendant-appellee state officials in Greenwood's suit brought pursuant to 42 U.S.C. § 1983; it did so on the ground that the officials had qualified immunity.[1] We disagree with the court's conclusion that Greenwood's property right in his clinical staff privileges was not

---

1. The district court also granted summary judgment to the state entities sued by Greenwood. This ruling, based on the state entities' Eleventh Amendment immunity, was not appealed.

clearly established and that the state officials were therefore entitled to qualified immunity on Greenwood's property claim. We agree with the district court, however, that the state officials had qualified immunity with respect to Greenwood's liberty claim. Accordingly, we affirm in part, vacate in part, and remand for further proceedings.

## BACKGROUND

Greenwood is a licensed psychiatrist. In 1977, he began working on the staff of the New York State Office of Mental Health ("OMH") in the OMH's Manhattan Psychiatric Clinic ("MPC"). In 1978, Greenwood received a permanent appointment at the MPC with the title of Psychiatrist II. As part of his MPC position, Greenwood obtained full clinical staff privileges.

The staff organization at the MPC to which Greenwood belonged was governed by the MPC By-laws, Rules and Regulations of the Medical Staff ("By-laws"). The By-laws and the Policy and Procedure Manual promulgated pursuant to them provided that staff members had a "right to due process ... where specific clinical privileges have been denied, disallowed, restricted or suspended."

Greenwood alleges that the defendant-appellee state officials ("MPC doctors"), all of whom were doctors at the MPC, conspired to destroy his career because of their unhappiness with his prior performance as president of the MPC staff. In November and December 1981, the MPC doctors began an investigation into four patient deaths that had occurred in Greenwood's ward. As a result of this investigation, which Greenwood contends was a sham, the MPC doctors concluded that Greenwood had been grossly negligent in his care of the four patients in question. The doctors recommended that Greenwood's clinical staff privileges be revoked and that he be demoted. Thereafter, Greenwood claims, the MPC doctors disseminated defamatory information about his medical skills to other hospitals and law enforcement personnel.

The recommendations of the MPC doctors were adopted by defendant-appellee Gabriel Koz, the MPC Director at the time, without any administrative hearing or notice to Greenwood. Koz also denied Greenwood's administrative appeal of these decisions on January 19, 1982. The MPC then moved to terminate Greenwood for cause, and over the next six years an arbitrator held hearings on the issue.

In 1988, the arbitrator concluded that—although Greenwood had been negligent in some cases—there was not just cause to fire him from the MPC. Moreover, the arbitrator found that the investigation of Greenwood was in bad faith, as "MPC's facility management was operating as a renegade .... [in] pursuing a personal vendetta against Dr. Greenwood." As a result of this ruling, Greenwood was reinstated to the MPC staff in 1989, but without the clinical privileges that he had previously enjoyed. Greenwood claimed that his new position was inadequate and refused to accept it. Shortly thereafter he was terminated from the MPC.

In 1984, Greenwood filed a § 1983 action alleging (1) that the MPC doctors had deprived him of a property interest in his clinical privileges without due process, and (2) that the "defendants' dissemination of the stigmatizing information contained in their fabricated ... report effectively rendered plaintiff unemployable" and therefore deprived him of a liberty interest without due process. The district court granted summary judgment for the MPC doctors, holding that (1) a property interest in clinical staff privileges was not clearly established in January 1982, when the alleged deprivation without due process was completed, and (2) a liberty interest for defamation combined with the loss of clinical staff privileges was also not clearly established in January 1982.

## DISCUSSION

■■■ We review a grant of summary judgment *de novo. See Russell v. Smith,* 68 F.3d 33, 35 (2d Cir.1995). "The defense of qualified immunity shields government officials from civil liability if the official's conduct did not violate constitutional rights that were clearly established at the pertinent time or if it was objectively reasonable for the official to believe that the conduct did not violate

such rights." *Cecere v. City of New York,* 967 F.2d 826, 829 (2d Cir.1992).

In determining whether a particular right was clearly established at the time defendants acted, this Court has considered three factors: (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991). "Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard." *Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

**I**

■ We address Greenwood's property claim first. The question of whether clinical staff privileges at a state hospital constitute a property interest, when they are supported by state law, is a matter as to which this court has not specifically ruled. In *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), however, the Supreme Court stated that a property interest is "defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577, 92 S.Ct. 2701. Accordingly, all the other circuits that have faced this issue have held that clinical staff privileges guaranteed by state law at a state hospital are a property interest protected by the Due Process Clause of the Fourteenth Amendment. *See, e.g., Lowe v. Scott,* 959 F.2d 323, 335–36 (1st Cir.1992) (collecting authorities). We agree with their holdings.

There is no doubt, moreover, that Greenwood's clinical privileges were an entitlement under state law—the MPC By-laws—and that under that law his privileges could not be revoked without certain procedural protections. We therefore hold that Greenwood's clinical privileges constituted property for purposes of due process.

■ The more difficult question is whether Greenwood's property interest in clinical privileges was clearly established in January 1982, when the alleged deprivation was completed. In holding that Greenwood's property interest was not so established, the district court relied on the absence of Second Circuit case law dealing directly with clinical privileges, as well as on cases both within and outside our circuit that it believed cast doubt upon the existence of a property interest in clinical privileges that are guaranteed by state law. Although we had not expressly addressed the status of clinical privileges before 1982, we nevertheless now conclude that a property right in such staff privileges was clearly established in New York as early as 1982.

In *Roth* and *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), which were decided in the 1970s, the Supreme Court established the principle that: "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *See Perry,* 408 U.S. at 601, 92 S.Ct. 2694 (citing *Roth* ). After *Roth* and *Perry,* but prior to 1982, two circuits had held that clinical staff privileges were a property interest under their respective state law for due process purposes. *See Ong v. Tovey,* 552 F.2d 305, 307 (9th Cir.1977); *Christhilf v. Annapolis Emergency Hosp., Ass'n,* 496 F.2d 174, 179 (4th Cir.1974). One circuit had so ruled even before *Roth* and *Perry* were decided. *See Chiaffitelli v. Dettmer Hosp. Inc.,* 437 F.2d 429, 430 (6th Cir.1971) (per curiam). No court of appeals had disagreed with this view prior to 1982. Indeed, no circuit court—before 1982 or since—has ever disputed that clinical staff privileges are a property interest if guaranteed by state law.

The district court advanced three arguments to support its holding that a property interest in clinical privileges was not clearly

established in 1982. First, it read our cases addressing due process property claims to imply that "property interests are confined to rights in continued employment, rather than in ancillary privileges such as those at issue in the instant case." The two cases relied on by the district court to that effect both, however, held that the particular jobs there involved were not protected under state law. *See Baden v. Koch*, 638 F.2d 486, 492 (2d Cir.1980); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 448 (2d Cir.1980). Moreover, the district court's distinction between property rights in employment and property rights in ancillary benefits finds no support in *Baden*, *Quinn*, or any other cases we have found. And, as *Roth* specifically stated, "[t]hese interests-property interests-may take many forms." *See Roth*, 408 U.S. at 576, 92 S.Ct. 2701.

Second, the district court believed that, prior to 1982, two district courts and the Pennsylvania Supreme Court had found that clinical privileges did not create a property interest. We disagree. The two district court cases, *Schlein v. Milford Hosp.*, 423 F.Supp. 541 (D.Conn.1976) (Newman, *J.*), and *Hyde v. Jefferson Parish Hosp. Dist. No. 2*, 513 F.Supp. 532 (E.D.La.1981), *rev'd on other grounds*, 686 F.2d 286 (5th Cir. 1982), *rev'd and remanded on other grounds*, 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984), both involved the question of whether an *application* for clinical privileges created a property interest, and both involved state laws that created no such entitlement. This is far different from Greenwood's case, in which he had already acquired the clinical privileges and was entitled to them under state law. And, in fact, one of the cases cited by the court makes that very distinction. *See Schlein*, 423 F.Supp. at 543 n. 1. Similarly, the decision of the Pennsylvania Supreme Court finding that a doctor had no property right to perform certain laboratory procedures was based on the fact that such procedures were not considered privileges and were therefore not protected by the hospital's by-laws. *See Adler v. Montefiore Hosp. Ass'n.*, 453 Pa. 60, 80–82 & n. 10, 311 A.2d 634, 644–45 & n. 10 (1973). In short, none of these cases can be taken to suggest that clinical privileges guaranteed by state law at a state hospital were not, even before 1982, a property interest protected by due process.

Finally, the district court relied heavily on the lack of any explicit holding in our circuit that clinical privileges were a property interest. We believe, however, that the clarity of the rule enunciated in *Roth* and *Perry*, the unanimity of the case law in other circuits, and the lack of any statements by us implying that clinical staff privileges guaranteed by state law were not a property interest for due process purposes suffice to make Greenwood's property right clearly established in 1982. *See In Re State Police Litigation*, 88 F.3d 111, 123 (2d Cir.1996) (stating that a right is clearly established if it is apparent "in the light of pre-existing law"). We conclude, therefore, that the MPC doctors were not entitled to qualified immunity on the ground that Greenwood's property right was unclear when the alleged § 1983 violation occurred.

This does not, however, dispose of the issue of qualified immunity with respect to Greenwood's property claim. For, even though his property right was clearly established, the district court still needs to consider what process Greenwood was due, whether this process, if violated, was clearly established in 1982, and whether, in the case of a clear violation, it was nonetheless objectively reasonable for the MPC doctors to have revoked Greenwood's clinical privileges in the process they gave him. The answers to these questions will determine whether the defendants are entitled to qualified immunity.

## II

■ We next address Greenwood's liberty claim. The district court assumed *arguendo* that Greenwood had a liberty interest before concluding that it was not clearly established in 1982. But, as we have noted, in qualified immunity cases "[t]he Supreme Court's unambiguous preference is that we consider the merits first," *see Medeiros v. O'Connell*, 150 F.3d 164, 169 (2d Cir.1998) (relying on *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998)). We will therefore begin by ascer-

taining whether the interest allegedly violated by the defendants constituted a liberty interest. Only later will we consider whether, if a liberty interest was indeed involved, that interest was clearly established at the relevant time.

 "[S]imple damage to reputation does not give rise to a liberty interest claim; rather, the damage must be accompanied by some significant deprivation, such as dismissal from government employment." *O'Neill v. City of Auburn,* 23 F.3d 685, 691 n. 2 (2d Cir.1994); *see Easton v. Sundram,* 947 F.2d 1011, 1016 (2d Cir.1991) (defamation plus the " 'termination of some other legal right o[r] status will suffice to constitute a deprivation of a liberty interest' " (quoting *Neu v. Corcoran,* 869 F.2d 662, 667 (2d Cir.1989)). This test for liberty interest claims stemming from alleged government defamation is commonly referred to as the "stigma plus" test. *See Neu,* 869 F.2d at 667.

Several circuits have held that the deprivation of a property interest satisfies the "plus" prong of stigma plus. *See, e.g., Cypress Ins. Co. v. Clark,* 144 F.3d 1435, 1436 (11th Cir. 1998); *San Jacinto Sav. & Loan v. Kacal,* 928 F.2d 697, 701–02 (5th Cir.1991); *Cooper v. Dupnik,* 924 F.2d 1520, 1532 n. 22 (9th Cir.1991); *Doe v. United States Dept. of Justice,* 753 F.2d 1092, 1106 (D.C.Cir.1985). We agree with this position. And since we have already concluded that clinical staff privileges create a property interest under New York law, we hold that government defamation combined with the deprivation of a property interest in clinical privileges gave rise to a due process liberty interest.

 We do not, however, find that this liberty interest was clearly established in 1982. As late as 1989, we stated that " 'stigma plus' is required to establish a constitutional deprivation, but it is not entirely clear what the plus is." *See Neu,* 869 F.2d at 667 (citation omitted). And we can find no case law prior to 1982 holding that an injury like the one Greenwood allegedly suffered gives rise to a liberty interest under the stigma plus test. We therefore agree with the district court that the MPC doctors are entitled to qualified immunity on Greenwood's liberty claim.

Accordingly, we affirm the judgment of the district court on Greenwood's liberty claim, vacate the judgment on his property claim, and remand the issue of qualified immunity for further proceedings consistent with this opinion.