Roger Todd ADLER, Plaintiff,

v.

COUNTY OF NASSAU and Nassau
County Medical Center,
Defendants.

No. CV 98–4438.

United States District Court,
E.D. New York.

Sept. 27, 2000.

Cahn, Wishod & Knauer, LLP by Richard C. Cahn, Melville, NY, for Plaintiff.

Friedman & Harfenist by Steven J. Harfenist, Lake Success, NY, for Defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Roger Todd Adler, M.D. ("Plaintiff") commenced this civil rights case alleging that his termination from employment as a resident at Nassau County Medical Center violated state law as well as his constitutionally protected rights to procedural and substantive due process. Presently before the court are the parties' cross-motions for summary judgment. After outlining the relevant facts the court will turn to the merits of the motions.

## BACKGROUND

### I. *Factual Background*

In light of the fact that this case is presented, at this juncture, as cross-motions for summary judgment, the court will outline here those facts relevant to the motions that are not in dispute. Where the parties disagree as to the particular characterization of facts, the court will so note.

### A. *Plaintiff's Employment at NCMC and the Contract of Employment*

Plaintiff graduated from the University of Chicago Medical School and was thereafter offered a residency with the Department of Surgery at the Nassau County Medical Center ("NCMC"). The position was offered Plaintiff by way of a letter dated March 16, 1995. The next day, Plaintiff was sent a contract of employment by NCMC (the "Contract"), which was signed by Plaintiff and a representative of NCMC in April of 1995. The Contract was a one year contract beginning on July 1, 1995 and terminating on June 30, 1996. As part of the contract, Plaintiff was required to undergo a physical examination along with such "periodic examinations and supplemental tests as are medically indicated in the opinion of the NCMC medical staff to determine whether [Plaintiff] is physically, mentally and emotionally able to perform [his] duties." The Contract gave NCMC the right to terminate its relationship with Plaintiff prior to its expiration date if any terms or conditions were violated.

The Contract provided that Plaintiff would be afforded "due process in accordance with the NCMC Policy Manual for Graduate Medical Education, Section 5.1.6" (the "Manual"). That section sets forth, *inter alia*, detailed procedures to be followed when resident is terminated prior to the end of an academic year.

Specifically, pursuant to the "Due Process Procedure" stated in section 5.1.6.7 of the Manual, a dismissed resident is entitled to be informed, by mail, of the reasons for the dismissal and given the right to request a hearing on the charges before an ad hoc committee. Within twenty days of NCMC's receipt of a request for a hearing, the ad hoc committee is to be appointed and the dismissed resident is to be informed of the date of the hearing. At the hearing, which is to be "informal," the parties are permitted to present all information regarding the dismissal that the committee deems necessary. There is no right to legal representation unless the committee grants that right. If the right to representation is granted, it is granted to both parties. Within fifteen days of the conclusion of the hearing the ad hoc committee is to recommend affirmance or rejection of the resident's dismissal.

The Education Committee of NCMC is charged with reviewing the decision of the ad hoc committee. The decision of the Education Committee is thereafter reviewed by the NCMC Executive Director. The Manual makes the decision of the Executive Director the final decision of NCMC.

### B. *Plaintiff's Dismissal From NCMC*

In June of 1995, Plaintiff underwent a physical examination and drug screening. That screening revealed the presence of the drug Valium in Plaintiff's bloodstream. The parties' characterization of Plaintiff's

use of Valium and his explanation of that use vary widely.

Plaintiff claims that he informed NCMC doctors that the Valium was properly prescribed by a physician and was being self-administered in connection with a program of physical therapy following Plaintiff's shoulder surgery. Defendants characterize Plaintiff's explanations for the detection of Valium as vague and suspicious. For the purpose of this motion, however, it is necessary only to note that Valium was detected. It is also necessary to note that despite this finding, Plaintiff began serving as a resident in the NCMC surgery program on July 1, 1995 and continued in that position, even after the results of the drug screen became known.

In a letter dated July 14, 1995, James T. Evans, the director of the Surgery Program at NCMC, informed Plaintiff that he had "failed to achieve the status" of an employee at NCMC. Dr. Evans based this finding on the results of the July drug screen combined with what was believed to be Plaintiff's failure to provide adequate documentation for his use of Valium. Plaintiff was informed that he was not an employee of NCMC and would not be "in the immediate future." He was ordered to surrender his identification badge and to vacate his housing as soon as possible.

On the day of his dismissal Plaintiff's family appeared at NCMC to discuss the dismissal and to endeavor to change the decision to dismiss Plaintiff. Additional documentation regarding Plaintiff's use of Valium was submitted including letters from Plaintiff's treaters and a letter from Plaintiff explaining his situation and his need for Valium during his post-operative period.

The efforts to reinstate Plaintiff apparently led to additional drug screenings and Plaintiff's agreement to undergo a psychological examination. On August 5, 1995, after Plaintiff submitted to his third drug test, he informed Dr. Westring, NCMC's Director of Academic Affairs, that he had taken a tablet of Fioricet. Although the August drug screen was negative, Plaintiff was dismissed from his position at NCMC, presumably because of his use of Fioricet as well as the results of the prior drug screening.

In a letter addressed to Dr. Westring dated August 10, 1995, Plaintiff requested a hearing with respect to his dismissal from the NCMC surgical program. Plaintiff's letter referred specifically to the due process procedures set forth in the Manual and requested the opportunity to be represented by counsel. NCMC, taking the position that Plaintiff had never achieved the status of an employee, declined to grant Plaintiff a hearing in accordance with the procedure set forth in the Manual.

## C. *State Court Proceedings Following Plaintiff's Dismissal*

On November 12, 1995, Plaintiff commenced a proceeding to review his dismissal pursuant to Article 78 of the New York Civil Practice Laws and Rules (the "Article 78 Proceeding"). While the trial court agreed with NCMC, holding that Plaintiff was not entitled to a hearing, that determination was reversed by the Appellate Division of the New York State Supreme Court (the "Appellate Division"). In an opinion dated January 12, 1998, the Appellate Division reversed the judgment of lower court and held that Plaintiff was, indeed, entitled to a hearing in accord with the procedures set forth in the Manual.

Specifically, the Appellate Division held that Plaintiff became an employee of NCMC upon commencement of his duties as a resident. Thus, the court held, as of that date, Plaintiff was entitled to all the protections granted in the Contract, including the right to a hearing as set forth in the Manual. The court further stated that, "having granted [Plaintiff] the right to a hearing, the NCMC limited its right to discharge [Plaintiff]." The court concluded that the dismissal of Plaintiff in violation of the procedures of NCMC was

a violation of its own policies and that a due process hearing must be held.

### D. *Events Following the State Court Litigation And Plaintiff's Subsequent Career Decisions*

For reasons that are unclear to this court, no hearing regarding Plaintiff's dismissal from NCMC was ever held. Plaintiff says that NCMC never "offered" to hold the hearing and Defendants state that Plaintiff "did nothing to compel" the hearing. In any event, it is clear that the hearing to which the State Court determined Plaintiff was entitled has not, to this date, been held. It should be noted, however, that after commencement of this litigation, counsel for NCMC wrote to Plaintiff's counsel requesting whether Plaintiff wished to proceed with the hearing ordered by the Appellate Division. The letter stated further that failure to inform defense counsel of the intention to pursue the hearing will be deemed a waiver of the hearing. Plaintiff's counsel does not appear to have responded to this correspondence.

Following Plaintiff's dismissal from NCMC, he accepted a preliminary (one year) residency at Maimonides Hospital. Maimonides did not renew Plaintiff's residency after completion of the first year and Plaintiff thereafter changed medical specialties and began a series of residencies in the field of ophthalmology.

Plaintiff states that he is now eligible to become licensed to practice medicine in the State of Ohio. He alleges that he has not yet applied for his medical license because of the blemish on his career that is a result of his experience at NCMC. Specifically, Plaintiff states that he is fearful of completing the necessary application, which requires that Plaintiff respond to questions regarding, *inter alia,* prior suspensions, investigations and negative reports. Plaintiff is loathe to disclose his experiences at NCMC because, even though he denies the allegations of drug use, he fears that prospective employers will be less likely to hire him than an individual who has no such disclosure on his application.

### E. *Plaintiff's Complaint*

In the action pending before this court, which was commenced by Plaintiff six months after the Appellate Division decision, Plaintiff sets forth four separate claims for the relief. The two federal causes of action allege deprivation of the right to procedural and substantive due process. The procedural due process claim alleges that Plaintiff was deprived of the property interest in his employment with NCMC as well as a liberty interest in his reputation without being afforded the hearing set forth in the Manual.[1] This denial of a hearing is alleged to be in violation of the due process clause of the Fourteenth Amendment to the United States Constitution. The substantive due process claim alleges that defendants deprivation of Plaintiff's Constitutional rights and his "eviction" from NCMC was "arbitrary, irrational and intended solely to injure and oppress" Plaintiff.

Plaintiff's two State law claims allege prima facie tort and intentional infliction of emotional distress. These claims allege defendants' conduct to be malicious and without justification and are alleged to have caused Plaintiff severe mental and emotional distress and anger.

In his prayer for relief Plaintiff does not seek an order compelling any type of hearing regarding his dismissal from NCMC. Instead, he seeks compensatory damages to compensate him for his distress and the

---

1. Plaintiff's complaint characterizes his due process claim as a deprivation of his property right. His ad damnum clause demonstrates clearly a claim for liberty deprivation when it seeks damages for injury caused to Plaintiff's "good name and professional reputation." Additionally, Plaintiff's memorandum of law in support of his motion for summary judgment makes clear that Plaintiff alleges a deprivation of his Constitutionally protected liberty interest.

alleged damage to his name and reputation, as well as an award of attorneys fees pursuant to 42 U.S.C. § 1988.

### F. *The Parties' Cross–Motions*

The parties have cross-moved for summary judgment.

Plaintiff seeks judgment on the issue of liability. In support of his position, Plaintiff relies on the preclusive effect of the State court ruling in Plaintiff's Article 78 Proceeding. Specifically, Plaintiff asserts that the state court ruling that NCMC acted in violation of its agreement with Plaintiff when it failed to offer him a hearing in accordance with the procedures set forth in the Manual, is res judicata, and leads to the conclusion that Plaintiff has been denied his Constitutional right to procedural due process.

Defendants argue that Plaintiff states no federal constitutional claim. Relying on much the same arguments presented to the State Court, defendants argue that because Plaintiff was never certified as a state employee in accordance with the New York Code of Rules and Regulations ("NYCRR"), he never possessed the legitimate entitlement to continued employment that is required to state a federal constitutional claim. Seeking to avoid any preclusive impact of the state court judgment, Defendants draw a distinction between "federally protected property rights" and "state law contractual rights"—the latter only having been decided in the Article 78 Proceeding and the former not. Defendants further argue that even if Plaintiff possessed a Constitutionally protected right to continued employment, he was nonetheless afforded all process that was due and was properly dismissed from NCMC.

### DISCUSSION

#### I. *Legal Principles*

##### A. *Summary Judgment Standards*

The standards for granting summary judgment are familiar. Such motions are properly granted only where the moving party can establish an absence of issues of material fact and an entitlement to judgment as a matter of law. Fed.R.Civ.P. 56(c). Where the moving party establishes an entitlement to relief, the non-moving party must establish the existence of a material issue of fact for trial to avoid summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

##### B. *Due Process Claims: Stating a Property and Liberty Interest*

Plaintiff claims denial of his due process rights—both substantive and procedural. The court considers each claim below.

■ When acting as an employer, the State has a Constitutional obligation not to deprive employees of liberty or property without due process of law. *Donato v. Plainview–Old Bethpage Central Sch. District,* 96 F.3d 623, 626 (2d Cir.1996). Due process has both a procedural and substantive component. Procedural due process requirements are generally satisfied by appropriate notice and an opportunity to be heard. *See Natale v. Town of Ridgefield,* 170 F.3d 258, 262 (2d Cir.1999); *Dillon v. Boyce,* 1995 WL 116476 * 2 (E.D.N.Y.1995). Substantive due process, on the other hand, refers not to particular hearing procedures, but circumscribes an "outer limit" on permissible governmental action. *Natale,* 170 F.3d at 263.

■ To state a due process violation—procedural or substantive—Plaintiff must first show a deprivation of a constitutionally protected property or liberty interest. *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1061–62 (2d Cir.), *cert. denied,* 510 U.S. 865, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993); *Costello v. McEnery,* 1994 WL 410885 *4 (S.D.N.Y. August 3, 1994), *aff'd,* 57 F.3d 1064 (2d Cir.1995). It is only when such a right is established that the court may turn to a discussion of whether there has been a deprivation of

that right without due process. Here, Plaintiff claims denial of a property interest in the terms of his employment at NCMC as well as a liberty interest in his professional reputation.

### 1. Property Interest

The "nature and contours" of claimed property interests are defined not by the Constitution, but by some independent source. *Greenwood v. New York*, 163 F.3d 119, 122 (2d Cir.1998); *Ezekwo v. New York City Health & Hospitals Corp.*, 940 F.2d 775, 782 (2d Cir.1991). A property interest may include any number of interests that are secured by "existing rules or understandings," *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), including those stated in a contract between the parties. A benefit contained in a public employment contract may be deemed a property interest under certain, but not all, circumstances. *See Ezekwo*, 940 F.2d at 782.

█ They key to determining whether a claimed benefit rises to the level of a Constitutionally protected property interest is not whether the benefit is contained in a contract between the parties. That is only the starting point because, as recognized by the Second Circuit, not every breach of contract rises to the level of interference with a Constitutionally protected property right. *Martz v. Village of Valley Stream*, 22 F.3d 26, 30 (2d Cir. 1994); *Ezekwo*, 940 F.2d at 782. A right rises to such a level only if it can be characterized as an "entitlement." Federal law alone determines whether a claimed interest rises to the level of an entitlement implicating the protections of the Due Process Clause. *Ezekwo*, 940 F.2d at 782; *Babcock v. Rezak*, 1998 WL 543742 *3 (W.D.N.Y. August 18, 1998). Thus, "to have a property interest in a benefit, a person must have more than an abstract need or desire for it.... He must, instead, have a legitimate claim of entitlement to it." *Ezekwo*, 940 F.2d at 782, quoting, *Board of Regents v. Roth*, 408 U.S. 564,

577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Sutton v. Village of Valley Stream*, 96 F.Supp.2d 189, 193 (E.D.N.Y.2000).

█ The question of entitlement requires the court to consider the importance of the right to the holder as well as the course of conduct of the party offering the right. *Ezekwo*, 940 F.2d at 783. Where the claimed right is no more than a claim to a particular work assignment or fringe benefit it will generally not be found to rise to the level of a constitutionally protected property right. *See, e.g., id.* at 782 ("trivial and insubstantial" interests do not rise to the level of property rights). On the other hand, where the right is significant and of great importance to the holder it may rise to such a level. An interest in a benefit is a property right if "there are such rules ore mutually explicit understandings that support [the] claim of entitlement to the benefit...." *Greenwood*, 163 F.3d at 122, quoting, *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

If the right claimed is contained in a written contract and is one that has been in existence and enforced for a period of time it is more likely to be deemed a property right for Constitutional purposes. *See Ezekwo*, 940 F.2d at 782 (recognizing that the appearance of a right in a written contract "obviously would make the existence of the right much more apparent ...."). One parties' course of conduct and the other parties' reliance thereon are significant in determining whether a claimed benefit rises to the level of a Constitutionally protected property interest. *Ezekwo*, 940 F.2d at 783.

█ Once it is determined that a claimed right rises to the level of a Constitutionally protected property right, the court must determine whether the plaintiff was afforded all the process that was due. In making this determination, the court considers several factors including: (1) the private interest to be affected by the official action; (2) the risk of an erroneous

deprivation of a right; (3) the value of any additional or substitute procedural safeguards and (4) the Government's interests, including the function involved and the burden presented by the imposition of additional safeguards. *Ezekwo,* 940 F.2d at 783; *see Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In connection with this review, the court also considers the necessity of a pre-deprivation remedy as well as whether state law provides adequate post-deprivation remedies. *Id.*

Where the alleged deprivation is "random" or "unpredictable," a pre-deprivation hearing may be impossible and a post-deprivation hearing will satisfy due process. Where, on the other hand, the deprivation is predictable, a pre-deprivation hearing may be necessary. *See Ezekwo,* 940 F.2d at 784.

2. *Liberty Interest*

The Constitution recognizes a government employee's "liberty" right to be free from stigmatizing disciplinary action. *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Brandt v. Board of Cooperative Educational Services,* 820 F.2d 41, 43 (2d Cir.1987). Stigmatizing actions include charges that could damage the plaintiff's standing in the community as well as those that might foreclose the opportunity to take advantage of other employment prospects. *Donato v. Plainview–Old Bethpage Central Sch. District,* 96 F.3d 623, 626 (2d Cir.1996); *Brandt,* 820 F.2d at 43; *see, e.g., Burka v. New York City Transit Authority,* 739 F.Supp. 814, 833 (S.D.N.Y. 1990) (charge of illegal drug use states a liberty claim because such a charge "lowers one's standing in the community and forecloses employment opportunities").

Where a liberty right is implicated, the employee is entitled, as a matter of due process, to notice and an opportunity to be heard. *Brandt,* 820 F.2d at 43. Such opportunity translates into the right to a hearing at which the employee is given the opportunity to clear his name so as to remove the blemish from his record and thereby secure new employment without the encumbrance of a damaged reputation. *Donato,* 96 F.3d at 626.

A claim of a deprivation of a liberty interest requires more than a bare claim of damage to reputation. Such claims are properly redressed under state defamation law. *Donato,* 96 F.3d at 629. To state a constitutional claim, the alleged defamation must be accompanied by some other significant deprivation, such as termination from employment. *Greenwood,* 163 F.3d at 124; *Donato,* 96 F.3d at 629.

Additionally, to proceed with a liberty claim a plaintiff must allege that the charges against him will be publicly disclosed. *See Brandt,* 820 F.2d at 43. The public disclosure requirement is satisfied where charges are placed in an employee's personnel file and are therefore likely to have an effect on future employment possibilities. *Brandt,* 820 F.2d at 45. In such a case, relief is available under Section 1983 if plaintiff can show a likelihood of future disclosure of his personnel file or other documents that will be provided to prospective employers. *See id.*

As noted, the denial of an employee's liberty right to her good reputation results in an order that an appropriate name-clearing hearing be held. If the charges are proved false, the court considers the claim for damages. If the charges are shown to be accurate, "that ends the matter." *Donato,* 96 F.3d at 633.

3. *Substantive Due Process*

Substantive due process rights are violated only by conduct "so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale,* 170 F.3d at 263. The mere violation of state law is not sufficient to demonstrate conduct so outrageous as to violate the substantive component of the due process clause. *See Natale,* 170 F.3d at 262.

Indeed, even a state court ruling that state law has been violated is not, standing alone, sufficient to constitute a substantive due process violation. *RRI Realty v. Incorporated Village of Southampton*, 870 F.2d 911, 912 (2d Cir.1989) (violation of state zoning laws does not necessarily constitute a substantive due process violation), *cert. denied*, 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989).

■ To state a claim of denial of substantive due process in connection with the termination of public employment, the employer's conduct must be shown to be arbitrary and intentionally abusive. *McClary v. O'Hare*, 786 F.2d 83, 88 (2d Cir.1986); *Schwartz v. Brown*, 857 F.Supp. 291, 298 (S.D.N.Y.1994).

## II. *Disposition of the Motions*

Application of the aforementioned principles of law to the undisputed facts herein leads the court to conclude as follows.

### A. *Plaintiff Possessed A Property Right To A Hearing Prior To His Dismissal*

■ As a threshold matter, the court holds that Plaintiff possessed a Constitutionally protected property right not to be terminated without a due process hearing in accordance with the procedures set forth in the Contract. The court reaches this conclusion not because of principles of res judicata and collateral estoppel, as argued by Plaintiff, but as a matter of application of the principles referred to above.

■ Application of preclusion principles to the finding of the Appellate Division do not require a finding that the Plaintiff's Constitutional right to due process was violated. This is because the issue decided by the state court was that NCMC breached its contract with Plaintiff when it dismissed him without holding the hearing required described in the Manual and guaranteed by the Contract. This is not the identical issue presented herein, *i.e.*, whether Plaintiff possesses a Constitu-

tionally protected property right to a hearing. Because the issues are not the same, collateral estoppel does not dictate a finding that Plaintiff had a Constitutionally protected property right in a hearing. *See Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir.1995) (collateral estoppel precludes relitigation of an issue, if *inter alia*, the issue sought to be precluded is identical to the issue in the second proceeding and is one which has necessarily been decided in an earlier proceeding in the context of a full and fair opportunity to litigate); *Caridi v. Forte*, 967 F.Supp. 97, 100 (S.D.N.Y.1997); *Capital Telephone Co. v. Pattersonville Telephone Co.*, 56 N.Y.2d 11, 17–18, 451 N.Y.S.2d 11, 436 N.E.2d 461 (1982); *Schwartz v. Public Administrator*, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969).

In view of the fact that the finding of a property right is not dictated by the state court ruling, this court must decide, in the first instance, whether Plaintiff possessed a Constitutional right to a hearing. Turning to that Federal question, the court observes that defendants note correctly, that not every breach of contract arises to the level of the breach of a Federal Constitutional property right. The court holds, however, that the right at issue here does rise to such a level. The court so holds because the factors referred to by the Second Circuit in *Ezekwo* are satisfied here.

First, there can be no question as to the importance of the right to the Plaintiff. The right to complete one's residency without arbitrary dismissal at the institution of one's choice is, indeed, an important right when considered in connection with a physician's career path.

The parties' course of conduct supports the notion that Plaintiff had a legitimate claim of entitlement to a hearing prior to his dismissal. As noted by the Appellate Division, NCMC limited its right to dismiss Plaintiff when it offered him a hearing prior to dismissal.

Finally, although not determinative of the issues herein, the holding of the State Court is nonetheless relevant to this court's determination. Specifically, defendants here are estopped from presenting the same argument presented to the state court with respect to the employment status of the Plaintiff. That is an issue that was argued before and decided by the state court. In view of the facts that: (1) Plaintiff was indeed an employee of NCMC who was entitled to a hearing prior to his dismissal as a matter of contract; and (2) that the right to a hearing prior to dismissal was an important right to Plaintiff and (3) that the right to a hearing was well established at NCMC, the court holds that Plaintiff's right to a hearing prior to his dismissal from the NCMC residency program constituted an entitlement and therefore a protected property right subject to the due process protections afforded by the Constitution. Accordingly, the court holds that defendants violated Plaintiff's Constitutional right not to be deprived of property without a hearing when Plaintiff was dismissed from his position without a hearing and grants Plaintiff summary judgment on this issue.

### B. *Plaintiff's Possesses A Liberty Right To Clear His Name*

The court further holds that Plaintiff's liberty right in his reputation is implicated herein. The dismissal in connection with an allegation of illegal drug use certainly satisfies the requirements that damage to reputation be serious and made in connection with a significant deprivation. That the facts surrounding the dismissal are part of Plaintiff's personnel file satisfies the public disclosure requirement of stating a liberty claim. Accordingly, the court holds that Plaintiff has demonstrated his right, as a matter of Federal Constitutional law, to a name clearing hearing.

### C. *There Has Been No Denial Of Substantive Due Process*

While Plaintiff has shown a deprivation of a property and liberty interest without due process of law, no such similar showing has been made with respect to the claim of a denial of substantive due process. As noted above, substantive due process concerns are implicated only by conduct "so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale*, 170 F.3d at 263. Under the facts presented herein, no such claim is stated.

Had there been an allegation of falsification of drug screening records such a claim might have been stated. It is uncontroverted, however, that Plaintiff's drug screen did, indeed, prove positive for Valium. Clearly, there are factual issues as to what precisely occurred thereafter. Even acceptance of Plaintiff's version of those facts, however, leads the court to conclude that no conduct alleged was so outrageous or arbitrary as to have violated Plaintiff's substantive due process rights.

Accordingly, the court grants summary judgment to defendants on the claim of denial of substantive due process.

### III. *Damages and Further Litigation in this Matter*

The finding that Plaintiff's Constitutional property right to a hearing was violated and that he has established a right to a name clearing hearing far from ends this matter. Plaintiff claims that he is entitled to an immediate trial on the issue of damages and seeks to proceed thereto. The court disagrees.

Lurking in the background of this entire litigation is the fact that Plaintiff, while entitled to a due process hearing, both as a matter of state contract and Federal Constitutional law, has never pursued any such hearing. Instead, he has pursued this action. Plaintiff's bypass of the procedures to which he was entitled puts the court in the position of attempting to decide damages that are all too speculative. Indeed, the fact that a hearing has not been held impedes this court with respect to the

question of damages on both the liberty and the property issues.

First, with respect to the liberty issue, the Second Circuit has held clearly that a district court's damages determination must await the determination of a name clearing hearing. *See Donato,* 96 F.3d at 633. If, at a hearing, the charges against Plaintiff are proven false, this court will consider the question of damages. If, on the other hand, the charges are proven true, "that ends the matter." *Donato,* 96 F.3d at 633.

While the necessity of a hearing prior to determining damages on the property claim is not as clear, the failure to engage in a hearing prior to that determination will undoubtedly cloud the matter. Certainly, Plaintiff is entitled to some measure of damages, quite possibly nominal, for the deprivation of a timely hearing. Those damages, however, are limited to those that are attributable to the deprivation of the hearing and not to whether or not Plaintiff was properly dismissed. The latter question goes to the possible damages on the liberty issue. As noted above, this is a matter that cannot be decided here prior to the hearing contemplated by the Manual.

As to the conduct of the name clearing hearing, the court holds that this forum is not the proper tribunal for deciding the veracity of the charges made against Plaintiff. The Constitution does not require that a specific procedure be followed and the process due to Plaintiff here does not rise to that level. *See Shub v. Hankin,* 869 F.Supp. 213, 217 (S.D.N.Y.1994); *aff'd,* 66 F.3d 308 (2d Cir.1995). The Constitution requires only that Plaintiff be given the opportunity to be heard at a "meaningful time and in a meaningful manner." *Logan v. Zimmerman Brush Company,* 455 U.S. 422, 423, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), quoting, *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Brady v. Town of Colchester,* 863 F.2d 205, 211 (2d Cir.1988). While the "meaningful time" has passed, the procedures set forth in the manual comport with the "meaningful manner" requirement. Thus, both Plaintiff's contractual and Constitutional process due is the procedure set forth in the Manual or, if such procedure is no longer feasible, a similar procedure before an impartial decision maker upon which the parties agree.[2]

In light of the foregoing, the court holds that it is appropriate to hold this matter in abeyance pending the outcome of the name clearing hearing. If the charges against Plaintiff are sustained, there will be no claim for damages to be pursued on the liberty claim and Plaintiff may return to court for a determination of damages on his property claim as well as the propriety of any claim for attorney's fees. At that time, the property damages issue can be determined without speculation as to the outcome of any liberty claim for damage to reputation. If, on the other hand, Plaintiff's name clearing hearing is successful and he is held to have been wrongly charged with illegal drug use, the parties may return here for a trial on the issue of damages attributable to the loss of liberty as well as property damages and attorney's fees. Finally, the court will hold any pending state claims in abeyance pending the outcome of Plaintiff's name clearing hearing.

## CONCLUSION

This opinion disposes of all pending summary judgment motions. The Clerk of the Court is directed to close this file at this time. This matter may be reopened upon notice to the court that the name

---

**2.** The court raises the feasibility issue because certain aspects of the procedures set forth in the Manual may no longer be possible to attain. For example, one member of the ad hoc committee is to be an attending physician from the dismissed resident's department. Since the person who held that position in 1995 is, obviously, no longer the attending physician, a substitute must be agreed upon.

**434**

clearing hearing has been concluded and further proceedings are necessary.

SO ORDERED.