Raymond J. SUTTON, Jr., Plaintiff,

v.

VILLAGE OF VALLEY STREAM, NEW YORK, James Darcy, Patrick McKenna and Nicholas Camarano, Defendants.

No. CV 99–2731.

United States District Court, E.D. New York.

May 8, 2000.

Wolin & Wolin, by Alan E. Wolin, Jericho, New York, for plaintiff.

Ryan & Brennan, by John E. Ryan, Floral Park, New York, for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is a civil rights case brought by plaintiff Raymond Sutton, Jr. ("Plaintiff" or "Sutton, Jr."), an employee of the Village of Valley Stream (the "Village") against the Village, its mayor, the Village attorney and a Village employee.

Also pending before this court is a factually related lawsuit commenced by the father of the Plaintiff herein. In that lawsuit, filed under docket number 98–5360, Plaintiff's father, Raymond Sutton, Sr. ("Sutton, Sr.") claims that adverse employment action was taken against him because of the exercise of his First Amendment rights—his expression of support for a particular political group.

Like the Sutton, Sr. lawsuit, this lawsuit alleges adverse employment action taken in retaliation for the exercise of First Amendment rights. This lawsuit differs from the Sutton, Sr. lawsuit in one important respect. Sutton, Jr. does not allege that he was retaliated against for his support of a slate of candidates. Instead, Sutton, Jr. argues that he suffered adverse employment action because his father voiced his political beliefs. Thus, Sutton, Jr. alleges a violation of his constitutional right to associate with his father, Sutton, Sr. Additionally, Sutton, Jr. alleges a violation of his right to substantive due process.

Presently before the court is defendants' motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

### I. The Parties

As noted, Plaintiff is Raymond J. Sutton, Jr. Named as defendants are the Village along with the individual who was the Mayor of the Village at all relevant times, James Darcy ("Darcy"), Village Attorney Patrick McKenna ("McKenna") and Supervisor of the Village Department of Public Works, Nicholas Camarano ("Camarano"). The individual defendants are named in their official as well as their individual capacities.

### II. The Facts Alleged By Plaintiff

The facts alleged in support of Plaintiffs' claims, as set forth in the complaint and accepted as true for the purpose of this motion, are as follows.

Plaintiff was first employed by the Village as a Motor Equipment Operator. After a 1991 car accident, Plaintiff received workers compensation payments for approximately two years. Thereafter, in

September of 1993, Plaintiff returned to work for the Village at his prior title, but performing different duties.

Plaintiff alleges that his father, Sutton, Sr., was known to be an active supporter of Mayor Donley who, in 1995, lost the Village mayoral election to defendant James Darcy. In or about December of 1996, after the election of defendant Darcy, Plaintiff began to work under defendant Camarano who is alleged to have begun harassing both Sutton Jr. and his father. This "campaign of harassment" is alleged to have intensified after Sutton, Sr. filed his lawsuit in this court. The acts of harassment of which Sutton, Jr. complains include, *inter alia* :

- ordering that Plaintiff's assignment be changed to the Village Sanitation Department (against Plaintiff's physician recommendation that he remain in the Highway Department);

- suspending Plaintiff's driving privileges because Plaintiff was allegedly involved in several motor vehicle accidents;

- accusing Plaintiff of removing a bag of cement from the Village without authorization (which accusation resulted in a suspension and reduction in wage grade);

- disciplining Plaintiff more harshly than other employees who engaged in more serious conduct;

- falsely accusing Plaintiff of sleeping on the job;

- requiring Plaintiff, without justification, to work an extra fifteen minutes on one occasion;

- downgrading Plaintiff's salary without justification and,

- being advised by his supervisor (allegedly at the request of defendant Ca-

marano), that Plaintiff would get only "shit" jobs.

### III. *Plaintiff's Complaint*

Plaintiff alleges causes of action pursuant to 42 U.S.C. §§ 1983 and 1985. Plaintiff's civil rights claims are based upon alleged violations of Plaintiff's rights pursuant to the First and Fourteenth Amendments to the United States Constitution.

The First Amendment claim alleges that decisions adversely affecting the terms of Plaintiff's employment were made in retaliation for Sutton Sr.'s exercise of his First Amendment right to support the candidates of his choice. Such retaliation is alleged to violate Sutton, Jr's. right of intimate association. Plaintiff's Fourteenth Amendment claim alleges that the actions of defendants amounted to a deprivation of Plaintiff's substantive due process rights.[1]

### IV. *Defendants' Motion*

Defendants seek dismissal of Plaintiff's complaint in its entirety. It is alleged that a First Amendment claim based upon the right of intimate association cannot be supported by a claim of interference with a father-son relationship. It is further argued that Plaintiff has not set forth facts sufficient to support a substantive due process claim.

### DISCUSSION

### I. *Standard for Motion to Dismiss*

A motion to dismiss is properly granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). When ruling on a motion to dismiss, the court must accept as true all

---

1. Plaintiff's complaint also makes reference to a violation of Plaintiff's Procedural Due Process rights and his right to Equal Protection of the Laws. Plaintiff's Memorandum of Law in opposition to the motion to dismiss seeks to support only his intimate association and his substantive due process claim. The court assumes, therefore, that Plaintiff is proceeding on these theories only.

factual allegations in the complaint. All reasonable inferences must be drawn in favor of the non-moving party. *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College,* 128 F.3d 59, 62 (2d Cir.1997). With these standards in mind, the court turns to the merits of defendants' motion.

## II. *Plaintiff's Causes of Action*

### A. *The First Amendment Intimate Association Claim*

▮ Plaintiff's first Section 1983 claim alleges deprivation of his First Amendment right of intimate association. Specifically, it is alleged that all adverse employment actions alleged to have been taken against Sutton, Jr., were taken in retaliation for Sutton, Sr.'s exercise of his constitutionally protected right to support the political candidates of his choice. Such action is alleged to have unconstitutionally intruded upon Plaintiff's relationship with his father.

#### i. *Legal Principles*

The right of intimate association, upon which Plaintiff bases his claim, was recently discussed by the Second Circuit in *Adler v. Pataki,* 185 F.3d 35 (2d Cir.1999). There, plaintiff alleged that he was unconstitutionally terminated from his public employment with the State of New York. Plaintiff supported his wrongful termination claim with the allegation that he was fired in retaliation for his wife's initiation of a lawsuit against the State. The firing of plaintiff in *Adler* was alleged to infringe upon plaintiff's right to associate with his wife.

The Second Circuit traced the source of the right claimed by plaintiff in *Adler* to one branch of the First Amendment right of association, *i.e.,* the right to associate with others in intimate relationships.[2] *Adler,* 185 F.3d at 42. The court noted that the state action at issue neither pro-

hibited, regulated nor was aimed at ending plaintiff's marriage—actions that have traditionally be held to violate the right of intimate association protected by other constitutional provisions. *See, e.g., Loving v. Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (striking down anti-miscegenation statutes as violating the Due Process Clause of the Fourteenth Amendment).

Where, however, there is a claim that the exercise of one spouse's First Amendment right harms a right of intimate association, that right was held to be properly analyzed as the deprivation of a right under the First Amendment. *Adler,* 185 F.3d at 44. Thus, while the court characterized the matter as "not free from doubt," it held that one spouse's claim that adverse employment action was taken solely in retaliation for the conduct of the other spouse is properly analyzed as a claimed violation of the First Amendment right of intimate association. *Id.* at 44.

The right of intimate association referred to in *Adler* has been described by the Supreme Court as a right that protects intimate "highly personal relationships." *Roberts v. United States Jaycees,* 468 U.S. 609, 618, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). The relationships sought to be protected from state intrusion are personal affiliations that, for example, "attend the creation and sustenance of a family—marriage ... the raising and education of children ... and cohabitation with one's relatives." *Id.* at 619, 104 S.Ct. 3244. Such protected relationships are characterized by "relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." *Id.*

#### ii. *Plaintiff Has Stated A First Amendment Claim*

The thrust of defendants' motion to dismiss is that neither the Second Circuit nor

---

2. The other branch of the First Amendment right of association is the right to associate with others for the purpose of engaging in activities protected by the First Amendment. *Adler,* 185 F.3d at 42. That right is not at issue here.

the Supreme Court would recognize the relationship between Sutton, Jr. and his father as falling into the category of Constitutionally protected "intimate" relationships. Although the issue raised is novel, the court disagrees and holds that the father-son relationship falls within the category of relationships discussed in *Roberts* and *Adler* and holds, therefore, that Plaintiff has stated a claim upon which relief may be granted.

The relationships held worthy of Constitutional protection are consistently referred to as familial in nature. *See Roberts*, 468 U.S. at 619, 104 S.Ct. 3244. While *Adler* held the question to be close, it nonetheless held that a claim was stated. The court sees no logical reason for holding that the father-son relationship is any less worthy of constitutional protection than the husband-wife relationship. In short, in light of the holding in *Adler*, the court holds that Sutton, Jr. has stated a First Amendment claim.

The court notes that it holds here only that a claim has been stated. Should defendants be able to show at trial that the employment decisions made regarding Sutton, Jr. had nothing to do with his father's political affiliations, they will prevail. If, on the other hand, it is proven that "simple vindictiveness" was defendants' true motive, the First Amendment will have been violated. *See Adler*, 185 F.3d at 45.

**B.** *Substantive Due Process Claim*

 Substantive due process circumscribes an "outer limit" on permissible governmental action. *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir.1999). Such rights are violated only by conduct "so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale*, 170 F.3d at 263.

 To state a due process violation Plaintiff must first show a deprivation of a constitutionally protected property or liberty interest. *White Plains Towing Corp.* *v. Patterson*, 991 F.2d 1049, 1061–62 (2d Cir.), *cert. denied*, 510 U.S. 865, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993); *Costello v. McEnery*, 1994 WL 410885 *4 (S.D.N.Y. August 3, 1994), *aff'd*, 57 F.3d 1064 (2d Cir.1995). It is only when such a right is established that the court may turn to a discussion of whether there has been a deprivation of that right without due process. While state law may define the interest sought to be protected, federal law determines whether an interest rises to the level of an "entitlement" implicating the protections of the Due Process Clause. *Ezekwo v. New York City Health & Hosp. Corp.*, 940 F.2d 775, 782 (2d Cir.), *cert. denied*, 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991), quoting, *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); *Babcock v. Rezak*, 1998 WL 543742 *3 (W.D.N.Y. August 18, 1998).

The creation of a property right to the terms of one's public employment must be based upon more than an "abstract need or desire," there must be a "legitimate claim of entitlement. . . ." *Morris*, 196 F.3d at 115, quoting, *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Thus, a plaintiff must establish that conferral of an employment benefit was "virtually a matter of right." *Kane*, 44 F.Supp.2d at 550, quoting *Schwartz v. Thompson*, 497 F.2d 430, 433 (2d Cir.1974); *see Gagliardi v. Village of Pawling*, 18 F.3d 188, 192 (2d Cir.1994).

Given the stringent standards for creation of a property right in connection with the terms of public employment, the court is inclined to hold here, as was held in the Sutton, Sr. lawsuit, that Plaintiff has not established the existence of a constitutionally protected property interest. Plaintiff's claim here, however, is distinguishable from his father's claim. In the Sutton, Sr. lawsuit, this court had little difficulty holding that there was no property right implicated. There, Sutton Sr. retained the same salary and Civil Service rank—he complained only that his duties

were changed. Because Sutton, Sr. could point to no term of his employment, contractual or otherwise, that virtually assured him that he would continue to enjoy all non-monetary benefits of his position, the court declined to find a protected property interest.

Even, however, if this case were sufficiently distinguishable from Sutton, Sr's. case to support the finding of a property interest, the court would nonetheless dismiss the substantive due process claim. As noted, this clause of the Fourteenth Amendment protects citizens from conduct that is so "outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale*, 170 F.3d at 263. Put simply, Plaintiff has alleged no such conduct herein. The changes in job responsibilities and salary reductions complained of, even if true and even if taken in retaliation for the actions of Sutton, Sr., do not rise to the required level. Accordingly, the court dismisses any claim pursuant to the substantive due process clause of the Fourteenth Amendment.

## C. *Qualified Immunity*

■ Although not raised by the parties, the court finds it appropriate to raise the issue of qualified immunity for defendant Darcy. A government official claiming qualified immunity bears the burden of proving either: (1) that the conduct alleged did not violate clearly established rights of which a reasonable person would have known, or (2) that it was "objectively reasonable" for the defendant to believe that the conduct did not violate plaintiff's clearly established constitutional rights. *McCullough v. Wyandanch Union Free Sch. District*, 187 F.3d 272, 278 (2d Cir. 1999).

A right is "clearly established" if "the contours of the right are sufficiently clear that a reasonable official would understand

that what he or she is doing violates the right." *Id.; see also Danahy v. Buscaglia*, 134 F.3d 1185, 1190 (2d Cir.1998), quoting, *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Objective reasonableness is established if reasonably competent individuals could disagree as to the legality their actions. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir.1995)

The constitutional right at issue here, the right of intimate association, is a right that had been established for many years prior to the conduct forming the basis of this action. However, the application of that right to the factual scenario presented here is one that was certainly not clearly established until the Second Circuit decision in *Adler*. Even there, the court characterized the issue as "not free from doubt." *Adler*, 185 F.3d at 44.

In light of the fact that Plaintiff's claim is based upon a case not decided in this circuit until 1999, and even then, acknowledged by the court to present a close question, the court holds that the right claimed was not so "clearly established" so as to defeat a claim for qualified immunity. *Accord Camacho v. Brandon*, 69 F.Supp.2d 546, 552 (S.D.N.Y.1999) (*Adler* presented a "unique cause of action that was not clearly established prior to the Court's decision."). Thus, the court holds that defendant Darcy is properly dismissed from this case on the ground of qualified immunity.[3]

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. Plaintiff's substantive due process claims are dismissed. The motion to dismiss Plaintiff's First Amendment claim is denied. The case is dismissed, in

---

**3.** Because the right claimed to have been violated was not clearly established at the relevant time, the court may grant defendants qualified immunity without engaging in a dis-

cussion of whether that it was "objectively reasonable" for the defendant to believe that their conduct did not violate plaintiff's clearly established constitutional right.

its entirety, as against defendant Darcy, on the ground of qualified immunity.

SO ORDERED.