**Michael MORAN, et. al., Plaintiff**

v.

**CITY OF NEW ROCHELLE, et al. Defendants**

**No. 00 CIV. 9829(SCR).**

United States District Court, S.D. New York.

Nov. 16, 2004.

---

Alan E. Wolin, Wolin & Wolin, Jericho, NY, for Plaintiffs.

Brian S. Sokoloff, Miranda & Sokoloff, LLP, Mineola, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

### I. Introduction

#### a. Procedural Background

Michael Moran, Sally Moran, Michelle Moriarity, James Moriarity, Franklin 44 Corp., 185 Union Avenue Realty Corp. and Souci Farms, LLC ("Plaintiffs") brought this action against the City of New Rochelle, New York ("City"), as well as Bernis Nelson, Ruth Kitchen, Robert Bongourni and Karl Cacciola in their individual and official capacities (collectively

the "Defendants")[1] pursuant to 42 U.S.C. § 1983 *et seq* and the First, Fifth and Fourteenth Amendments to the United States Constitution.

Michael and Sally Moran, who are husband and wife, live in Larchmont, New York and are the sole owners of Franklin 44 Corp., 185 Union Avenue Realty Corp. and Souci Farms, LLC. Franklin 44 Corp. owns property, on which a multi-family apartment building is situated, at 44 Franklin Avenue in New Rochelle. 185 Union Avenue Realty Corp. owns two properties in New Rochelle, where other multi-family apartment buildings are located. The Morans' daughter, Michelle Moriarity, lives on 190 Wilmot Road in New Rochelle with her husband, James Moriarity. Souci Farms, LLC purchased the Wilmot Road property on April 2, 1998 and, shortly thereafter, the Moriaritys took occupancy. According to the Plaintiffs, the Moriaritys became the lawful owners of the Wilmot Road property in November 2000. *See* COMPL. ¶¶ 17–18.

The individual defendants are various officers in New Rochelle's government: Bernis Nelson is Corporation Counsel for the City of New Rochelle; Ruth Kitchen is a member of City Council; Robert Bongiorni is Lieutenant in the New Rochelle Fire Department; and Karl Cacciola is Building Inspector with the City of New Rochelle Bureau of Buildings, Department of Development. *See* COMPL. ¶¶ 20, 23, 25, 27.

**b. Factual Background**

The Plaintiffs describe themselves as vocal advocates for their rights as landowners and, as such, have "constantly voiced their protestations to defendants, their agents, servants and employees, about the treatment afforded them" by the City of New Rochelle. *See* COMPL. ¶ 36.[2] The Plaintiffs claim that the defendants have responded to their speech by undertaking a "campaign" of "harassment, reprisal and retaliation." COMPL. ¶¶ 40–41. This campaign has allegedly consisted of the issuance of multiple, unwarranted housing and zoning violations[3] and the passage of a zoning ordinance prohibiting the maintenance of farm animals, including horses, on certain properties, that was deliberately targeted at the Plaintiffs, who were keeping two horses on the Wilmot Road property. *See* COMPL. ¶ 61. Plaintiffs insist that other, similarly situated property

---

1. The Plaintiffs initially named additional City officials as defendants, but later voluntarily discontinued their case against them.

2. Plaintiffs indicate that this advocacy has included, *inter alia*, objecting to the right of an adjoining property owner to utilize the Plaintiffs' driveway at 44 Franklin Avenue, writing a letter to the Office of the Corporation Counsel, filing a Notice of Claim with reference to unnecessary damage inflicted upon their 44 Franklin Avenue property by the New Rochelle Fire Department in 1998, making numerous communications with the City of New Rochelle City Council and ultimately filing an Article 78 proceeding with reference to Defendants' efforts to restrict the use of Plaintiffs' property at Wilmot Road, publicly opposing Defendants' practices with reference to their properties, and vigorously

contesting all code violation notices served on them by defendants. *See* COMPL. ¶ 37.

3. According to Plaintiffs' Complaint, this campaign has included, *inter alia:* issuing Franklin 44 Corp. a property code violation for having grass exceeding 6" in height (¶ 42); issuing Franklin 44 Corp. a housing code violation for failing to maintain adequate heat (¶ 44); causing damage to the 44 Franklin Ave. property while responding to a complaint that there were no lights in an apartment (¶ 45); issuing Plaintiff 185 Union Avenue Realty Corp. a fire/housing code violation for failing to maintain walls due to a crack in a bedroom wall (¶ 47); failing to comply with appropriate procedures by issuing Plaintiffs violation notices without first issuing warning notices (¶ 57).

owners within the City of New Rochelle have not been subjected to similar treatment. *See* COMPL. ¶ 64.

## II. Analysis

### a. Applicable Legal Standards

Defendants filed a multi-faceted motion requesting various forms of relief from the court. This motion contained both motions for summary judgment and motions to dismiss as well as requests for other legal determinations from the court.

Therefore, the Defendants' motion requires the application of multiple legal standards. Where the Defendants have made motions for summary judgment, the court may only grant the Defendants relief if "there is no genuine issue as to any material fact[.]" Fed.R.Civ.P. 56(c). Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden falls on the moving party who is required to "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets its burden, the burden shifts to the party opposing summary judgment to set forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Where the Defendants have made motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court accepts as true all material factual allegations in the complaint and draws all reasonable inferences in favor of the non-movant. *Still v. DeBuono*, 101 F.3d 888, 891 (2d Cir.1996). We may grant the motion only where "it appears beyond doubt that the plaintiff can prove

no set of facts in support of [its] claim which would entitle [it] to relief." *Id.* at 891.

### b. Moriarity Plaintiffs' Failure to State a Claim

■ Defendants argue that the Plaintiffs Michelle and James Moriarity fail to state a claim in this case because they are alleging that they were retaliated against for speech by Michelle's parents Michael and Sally Moran. Generally speaking, individuals have no standing to assert § 1983 claims to vindicate the rights of a third party and, as such, cannot assert claims of retaliation against speech by another individual. *See Morris v. Lindau*, 196 F.3d 102, 113 (2d Cir.1999). In response, the Moriaritys claim a violation of the First Amendment right of intimate association, which has, at least in some circumstances, been applied to allow individuals to state claims based on retaliation for another's speech. *See Adler v. Pataki*, 185 F.3d 35, 44 (2d Cir.1999) (holding that an adverse action taken solely against a spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of a First Amendment right of intimate association).

Supreme Court precedent suggests that this right of intimate association extends beyond the marital relationship. *See Roberts v. United States Jaycees*, 468 U.S. 609, 619, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984) ("The personal affiliations that exemplify these considerations, and that therefore suggest some relevant limitations on the relationships that might be entitled to this sort of constitutional protection, are those that attend the creation and sustenance of a family" and include marriage, childbirth, the raising and education of children and cohabitation with one's relatives). The Court's language clearly suggests that the right of intimate association extends to the

parent-child relationship. *See Sutton v. Village of Valley Stream,* 96 F.Supp.2d 189, 192–93 (E.D.N.Y.2000).

■ Holding that the right of intimate association extends to the parent-child relationships is not sufficient to fully resolve this case, however. By bringing claims on behalf of James Moriarity, the Plaintiffs are arguing that this right of intimate association extends not only to children but also to children-in-law. Given the close relationship between spouses, state actions that adversely impact the parent-child-in-law relationship will necessarily impact the parent-child relationship as well. In light of the consistent protection afforded both the marital and parent-child relationships, the court finds that the right of intimate association does extend to the parent-child-in-law relationship.

■ There are two essential prerequisites to any action brought under Section 1983: First, the conduct complained of must have been committed by a person acting under color of state law and, second, that conduct must have deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Rand v. Perales,* 737 F.2d 257, 260 (2d Cir.1984). Defendants argue that, even if the Moriaritys had a First Amendment right of intimate association, they were not injured, and therefore their rights were not deprived. In particular, the Defendants argue that the Moriaritys could not have been harmed by the farm animal ordinance because they purchased the property a year after the ordinance was passed, and therefore cannot claim to have suffered a decline in the

value of their property. This argument is unpersuasive, however, given that Plaintiff Michelle Moriarity has testified to incurring additional costs as a result of the ordinance, including the costs of relocating the horses and supporting their upkeep at a different location.

■ Defendants then argue that the Moriaritys cannot state a claim because there were valid reasons for the Defendants' adverse actions beyond the intimate association. Defendants' argument is without merit. The cases cited by the Defendants stand for the unremarkable proposition that Plaintiffs are not entitled to relief unless it is established that the Defendants' motivation for acting was to retaliate for the Plaintiffs' speech. *See Sutton v. Village of Valley Stream,* 96 F.Supp.2d 189, 193 (E.D.N.Y.2000).[4] Nowhere do they suggest that the mere existence of other plausible motivations undermines a claim for relief.

■ Although, for these reasons, the Moriarity plaintiffs have stated a claim, the *individual* Defendants are nevertheless immune from liability vis à vis the Moriaritys. In accordance with the doctrine of qualified immunity, government officials are shielded from liability flowing from their performance of discretionary functions as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The right of intimate association on which the Moriaritys are relying was not clearly established when the conduct relevant to the Moriari-

---

4. Specifically, the court in *Sutton* stated: "The court notes that it holds here only that a claim has been stated. Should defendants be able to show at trial that the employment decisions made regarding Sutton, Jr. had nothing to do with his father's political affilia-tions, they will prevail. If, on the other hand, it is proven that "simple vindictiveness" was defendants' true motive, the First Amendment will have been violated." 96 F.Supp.2d at 193.

tys' claim, namely the passing of the farm animal ordinance in December 1999, took place. The principal Second Circuit precedent recognizing the right, *Adler v. Pataki*, was decided in July 1999, and even in that case the court acknowledged that "[t]he nature and extent [of the right to intimate association] is hardly clear...." 185 F.3d at 41–42. Moreover, *Adler* recognized the right to intimate association between spouses, and it was not until May 2000 that the Eastern District of New York extended the right to encompass the parent-child relationship, *see Sutton*, 96 F.Supp.2d at 193, let alone the parent-child-in-law relationship recognized here. As such, the right to relief at issue was not clearly established at the time the individual defendants acted, and thus they are immune from suit with respect to the Moriarity plaintiffs. *See Jenkins v. Tyler*, 167 F.Supp.2d 652, 656 (S.D.N.Y.2001) (holding that an individual defendant was immune from suit based on a right to intimate association between mother and son that was allegedly violated by acts occurring in the year 2000).

### c. Collateral Estoppel

Defendants argue that collateral estoppel bars the plaintiffs from arguing that 1. the farm animal ordinance is invalid; 2. the farm animal ordinance deprived the plaintiffs of any right; 3. that they are not guilty of the only criminal instruments issued to them. A party is collaterally estopped from raising an issue in a proceeding if: (1) the identical issue was raised in a previous proceeding; (2) the issue was "actually litigated and decided" in the previous proceeding; (3) the party had a "full and fair opportunity" to litigate the issue; and (4) the resolution of the issue was "necessary to support a valid and final

judgment on the merits." *Central Hudson Gas & Elec. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir.1995).

■ Defendants contend that the decision by Justice Leavitt of the Supreme Court, Westchester County in the Article 78 proceeding brought by Souci Farms actually decided that the farm animal ordinance was valid and that the farm ordinance did not deprive the plaintiffs of any right. Leaving aside the issue of whether any Plaintiffs apart from Souci Farms would be bound by such a decision, the Defendants interpretation of it is incorrect. In that proceeding, Souci Farms, LLC argued that the zoning ordinance was an "illegal and unconstitutional...taking in violation of Petitioner's right to due process and property rights *because said ordinance [did] not contain any provision for a pre-existing non-conforming use.*" Valverde Decl. Exh. I ¶ 8 (emphasis added). In a brief opinion, Justice Leavitt merely held:

> "Whether or not, as petitioner alleges, it purchased the property with the intent of keeping horses, and because horses had previously been kept...thereon is irrelevant. There is absolutely no indication that the keeping of horses has ever been other than an incidental or accessory use. Consequently, petitioner has no right to continue doing so on a theory of prior non-conforming use...." *Souci Farms, LLC. v. City of New Rochelle*, N.Y. Sup.Ct. (Leavitt, J.), Apr. 18, 2000.

First, it is important to note that Justice Leavitt's statement could, at most, be construed as a determination that the ordinance was valid on the grounds that it lacked an exception for prior non-conforming use.[5] But even with respect to those

---

**5.** The validity of the ordinance on the grounds that it violated any other rights, for example,

was in no way decided or addressed by Justice Leavitt.

grounds, Justice Leavitt did not actually reach the issue of the ordinance's validity, because the court held that Souci Farms would not have been entitled to an exception anyway, because its use was not substantial enough. *See People v. Miller*, 304 N.Y. 105, 106 N.E.2d 34, 36 (1952) ("[A]n inconsequential use...does not amount to a "vested right""). The Court never reached the issue of the validity of the ordinance and, therefore, the Plaintiffs in this case are not barred from arguing, on the grounds that it lacked an exception for prior non-conforming use, that the ordinance was invalid.

■ The analysis is different, however, with respect to the issue of whether the ordinance denied the Plaintiffs any property right. Holding that Souci Farms' use was merely incidental was tantamount to holding that it had no vested right, *see Miller*, 106 N.E.2d at 36, and necessary to holding that it had no right to continuing use. Souci Farms is, therefore, barred from arguing that it did have a property right in having horses on its property.

■ Aware that there are multiple plaintiffs in this case, the Defendants argue that all of the plaintiffs in this case are bound by the prior determination because Michael and Sally Moran were "principals" of Souci Farms, and because the lot at issue was subsequently sold to the Moriaritys. Defendants are essentially correct. Issue preclusion can be applied against a party in privity with a litigant in the prior case. *See* 18 MOORE'S FEDERAL PRACTICE, § 132.04[1][b][i] (Matthew Bender 3d ed.). The Moriaritys are barred because a nonparty who has succeeded to a party's interest in property are in privity for collateral estoppel purposes. *See id.* at 132.04[1][b][iv] *citing Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973). Furthermore, the Morans are barred because nonparties who controlled the original suit are also bound by the resulting judgment. *See* 18 MOORE'S FEDERAL PRACTICE, § 132.04[1][b][iv]; *Kreager v. General Elec. Co.*, 497 F.2d 468, 472 (2d Cir.), *cert. denied*, 419 U.S. 861, 95 S.Ct. 111, 42 L.Ed.2d 95, *reh'g denied*, 419 U.S. 1041, 95 S.Ct. 530, 42 L.Ed.2d 319 (1974) (president and sole shareholder controls corporation). Here the Morans were the sole shareholders of Souci Farms, and undoubtedly controlled both that company and the litigation at issue.[6]

Collateral estoppel also applies to the issue of Plaintiffs' guilt with respect to the desk appearances. Plaintiff 185 Union Ave. was tried and convicted of several counts of unlawfully removing plumbing fixtures and these convictions were ultimately affirmed on appeal. Plaintiffs 185 Union Avenue and its sole shareholders the Morans are, therefore, barred from contesting its guilt with respect to those desk appearances.

As noted in the Plaintiffs' Opposition papers, it is worth emphasizing that both prior proceedings relied upon for collateral estoppel purposes involved only two issues—the farm animal ordinance and the desk appearances. To the extent the Plaintiffs are basing their claims for relief on other actions by the City and the individual defendants, they are entirely unaffected by prior proceedings.[7] Further-

---

6. There are, of course, additional corporate plaintiffs in this case that would not be barred by collateral estoppel principles. They would, however, be unlikely to have standing to claim damages with respect to the Souci Farms property and the zoning ordinance.

7. For example, the mere fact that Plaintiff Souci Farms is barred from arguing that the farm animal ordinance deprived it of a property right does not mean it cannot, in theory, support its claim for violation of substantive due process by alleging violations of other

more, Defendants have cited, and the court has not found, any evidence in the record that the criminal proceedings involving the desk appearances ever addressed or decided the issue of the City's motive in issuing them.

### d. Whether Plaintiffs Have Stated A Claim Under § 1983

### i. City Policy or Custom

First, Defendants argue that the Plaintiffs have not adequately alleged a violation by the City of New Rochelle because they have failed to show that the municipality defendant had a policy or custom that caused the deprivation of civil rights. *See City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Under § 1983, a municipality cannot be held liable solely on a theory of *responde at superior* liability, *see Monell v. Department of Social Services*, 436 U.S. 658, 694–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and therefore the plaintiff must demonstrate "a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. at 385, 109 S.Ct. 1197.

In some circumstances, however, actions by individual policymakers can be sufficient to establish municipal liability. In particular, "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with re-

spect to the subject matter in question." *Pembaur v. Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Plaintiffs argue that Bernis Nelson, Corporation Counsel, satisfied this standard by directing various agencies of the New Rochelle government to issue the Plaintiffs violations. The court disagrees.

Whether the official in question possessed final policymaking authority is a legal question, which is to be answered on the basis of state law. *See Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir.2000). The plaintiff has the burden of proving this element. *See id.* at 57–58. Contrary to the Plaintiffs' claims, however, nothing in the City of New Rochelle Charter indicates that the Corporation Counsel has any responsibility for, let alone final authority over, the issuance of code violations to city residents. Rather, the City Charter designates the Corporation Counsel "legal advisor of and attorney for the city and for all officers, departments, bureaus, boards and commissions thereof in matters relating to their official duties," and grants it the responsibility of "prosecut[ing] or defend[ing] all actions, suits and proceedings for and in behalf of the city." CHARTER § 49. Although the Charter clearly grants the Corporation Counsel substantial responsibility, none if it even closely relates to the issuance of code violations.[8] *See Jeffes*, 208 F.3d at 57 (the court must ask whether the governmental official is a final policymaker for the local government in a particular area, or on the particular issue, involved in the action) (internal quo-

---

property rights that may have resulted from other actions by the City.

**8.** Admittedly, Bernis Nelson, the Corporation Counsel during the events in this case, did testify during her deposition that she is sometimes consulted by officials of the City of New Rochelle before they issue violations. But

being consulted is entirely different from having final authority over the issuance of violations. Similarly, the fact that the Corporation Counsel is responsible for prosecuting violations is also distinct from the decision to issue them in the first place.

tations omitted).[9] Therefore, the plaintiffs cannot state a claim against the City with respect to the criminal instruments and other code violations involving the Plaintiffs' properties.

Unlike the various housing code violations, it is worth emphasizing that the farm animal ordinance was clearly a change in municipal policy, and therefore the City can be held liable in connection thereto.

### ii. Connection Between Speech and City Action

Plaintiffs asserting § 1983 claims based on alleged retaliation for protected speech must allege that (i) he has an interest protected by the First Amendment, (ii) the defendant's actions were motivated by or substantially caused by the plaintiff's exercise of that right, and (iii) the defendant's action effectively chilled the exercise of the plaintiff's First Amendment rights. *See Connell v. Signoracci,* 153 F.3d 74 (2d Cir.1998). Defendants argue that the Plaintiffs have not shown that the Defendants' conduct was motivated by any speech by the plaintiffs.

■ In support of their argument, Defendants note that at least some of the adverse actions complained of by the Plaintiffs were taken before the Plaintiffs began speaking. This fact is, in theory, significant for two reasons. First, it is necessarily the case that actions that occurred prior to the speech could not have been caused by the speech and, therefore, cannot form the basis of liability under a § 1983 retaliation claim.

Second, the fact that violations were issued before the speech began is, at least

according to the Defendants, evidence that the adverse actions taken after the speech were not caused by the speech. Defendants bolster this argument by pointing to deposition testimony by Building Inspector Karl Cacciola indicating that he was not aware of the Plaintiffs' public comments when he issued violations but rather issued violations in response to other residents' complaints. In response, Plaintiffs emphasize that Bernis Nelson, who the Plaintiffs accuse of directing other officials to harass the Morans, was aware of the Morans' complaints about damage caused by the Fire Department and had some conversations with the Morans about violations. In effect, therefore, the Plaintiffs are asking the court to infer a causal relationship between the Plaintiffs' speech and the Defendants' conduct purely because Ms. Nelson was aware of some of the speech when some, but not all, of the City's actions at issue were taken. Although the court is, of course, required to draw all reasonable inferences and resolve all ambiguities in favor of the party opposing summary judgment, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the court does not find such an inference to be reasonable in the face of uncontroverted testimony indicating that many violations were issued before the Morans started speaking and after complaints from other residents.

Therefore, Defendants' motion for summary judgment with respect to the Plaintiffs' First Amendment retaliation claim is granted.

### iii. Equal Protection Claim

■ To establish an equal protection claim, the Plaintiffs must establish (1) that

---

**9.** In support of their argument, Plaintiffs point to Sally Moran's testimony that she had heard or been told that Ms. Nelson was directing agencies and officials to issue code violations. This argument is unpersuasive. Even assuming that such testimony were admissible, it is irrelevant to any *legal analysis* of the Corporation Counsel's powers.

they were selectively treated as compared to other similarly situated persons; and (2) such selective treatment was based on impermissible considerations such as race, religion, intent to punish the exercise of constitutional rights, or malicious bad faith intent to injure. *See Crowley v. Courville,* 76 F.3d 47, 52–53 (2d Cir.1996).

Defendants claim that the evidence does not support a finding of selective treatment. First, they point to evidence and testimony indicating that many property owners other than the Plaintiffs received building violations during the relevant period. Defendants also argue that they had valid reasons for not enforcing the farm animal ordinance against other property owners. In particular, Defendants point to evidence indicating that the horse owned by the Mann family was the size of a pet, and that the Coopers Corners Nursery was located on a property that was larger than the Plaintiffs'.

Nevertheless, Plaintiffs have set forth sufficient evidence to create questions of fact, particularly with respect to the farm animal ordinance. In particular, the testimony of Ms. Nelson indicates that the ordinance was proposed in response to the Morans' horses and crafted to ensure that the Morans were in violation. Moreover, there is conflicting testimony over whether there were farm animals (including a pony, peacocks and chickens) at Cooper's Corners Nursery, which did not receive a violation. And as Plaintiffs note, the City failed to issue the Mann family a violation, even though their miniature horse can plausibly be construed as prohibited by the ordinance.[10]

▆ As discussed above, Plaintiffs have not provided adequate evidence to

support a claim of discrimination in retaliation for their exercise of constitutional rights, and are therefore left to rely on a showing of malicious bad faith in order to satisfy the second requirement of an equal protection claim. The court finds that there is sufficient evidence in the record to raise a reasonable question of fact as to whether the city acted with malicious bad faith. First, there is evidence supporting Plaintiffs' claim that members of the New Rochelle Fire Department caused unnecessary damage to a door when responding to a complaint about a lack of electricity at 44 Franklin Avenue. Specifically, Michael Moran testified that members of the fire department broke down a door before attending to the fuse box inside. Moreover, evidence of selective enforcement is itself evidence of bad faith in this regard. *Cf. Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (equal protection claims may brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment).

Therefore, Defendants' motion for summary judgment with respect to the Plaintiffs' Equal Protection claim is denied.

### iv. Substantive Due Process

Where, as here, a Plaintiff claims a deprivation of property without due process in violation of the Fourteenth Amendment, the Court must find: (a) that a property right has been identified; (b) governmental action with respect to that property right amounts to a deprivation; and (c) the deprivation, if found, was visited upon the plaintiff without due process of law. *See*

---

**10.** In addition, Plaintiffs have provided some evidence indicating selective issuance of building violations. Sally Moran testified, for

example, that she observed that other residents were in violation of ordinances but not prosecuted.

*Fusco v. Connecticut,* 815 F.2d 201, 205 (2d Cir.1987).

■ Plaintiffs cannot satisfy these requirements. With respect to fines imposed due to violations of zoning ordinances, they were imposed after proper trials, guilty verdicts and appeals. Further, as discussed above, Souci Farms, the Morans and the Moriaritys are all barred from arguing that the zoning ordinance deprived them of property rights, due to the state court's determination that their housing of horses was an inconsequential use. And to the extent the Plaintiffs are claiming that the farm animal ordinance deprived them of property by reducing their property's value, governmental action allegedly causing a decline in property values has never been held to "deprive" a person of property within the meaning of the Fourteenth Amendment. *See BAM Historic District Association v. Koch,* 723 F.2d 233, 237 (2d Cir.1983).

Therefore, the Plaintiffs' § 1983 claim based on an alleged violation of substantive due process claim is dismissed.[11]

### e. Whether the Plaintiffs Have Stated A Claim Under 42 U.S.C. § 1985

■ Defendants argue that the Plaintiffs' § 1985 claim should be dismissed because all of the Defendants—the City of New Rochelle and its individual officers—are a single entity for the purposes of this statute. *See Tavoloni v. Mount Sinai Med. Ctr.,* 984 F.Supp. 196, 205–06 (S.D.N.Y.1997) (the defining element of a conspiracy is not satisfied by employees of a single entity acting within the scope of their employment). This principle applies to bar § 1985 suits against municipalities and their employees. *See Frooks v. Town of Cortlandt,* 997 F.Supp. 438, 456 (S.D.N.Y.1998) (dismissing a claim for conspiracy under section 1985 because the plaintiffs merely alleged that the Town conspired with its employees to violate their constitutional rights).

■ In response, the Plaintiffs rely on two exceptions to this doctrine, which they allege are applicable here. First, they argue that the Defendants in this case were not acting within the scope of their employment. This argument, however, is unavailing. The essence of the Plaintiffs' complaint is that the Defendants harassed the Plaintiffs by passing ordinances and issuing violations—conduct that is surely within the scope of the Defendants' employment as city officials. Moreover, to the extent the Plaintiffs are arguing that the doctrine does not apply simply because the Defendants were acting out of personal bias, this too is unpersuasive. *See Johnson v. Nyack Hosp.,* 954 F.Supp. 717, 723 (S.D.N.Y.1997) (personal bias is not the sort of individual interest that takes a defendant out of the intraenterprise conspiracy doctrine where, as here, the action complained of arguably served a legitimate interest of the Defendant).

As such, the Plaintiffs § 1985 claim is dismissed.

### f. Immunity for Individual Defendants

### i. Qualified Immunity for Robert Bongiorni and Karl Cacciola

Government officials performing discretionary functions generally are granted qualified immunity insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Wilson v. Layne,* 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). The

---

11. To the extent Plaintiffs are claiming a violation of procedural due process rights, the court finds that such a claim is also without merit and should be dismissed.

Second Circuit has outlined the method by which qualified immunity claims should be addressed. As an initial matter, the court must address whether the conduct was objectively reasonable. *See Blue v. Koren,* 72 F.3d 1075, 1084 (2d Cir.1995). If not, the motion must be denied, but if the conduct was objectively reasonable, the plaintiff must provide particularized evidence of direct or circumstantial facts supporting a claim of an improper motive in order to avoid summary judgment. *See id.*

The first task, therefore, is to determine whether the conduct of Defendants Bongiorni and Cacciola was objectively reasonable. With respect to Bongiorni, the Plaintiffs' claims stem largely from the desk appearances he issued for removing plumbing fixtures from an occupied apartment. It is difficult to argue that Bongiorni acted unreasonably in issuing them, though, given that the Plaintiff 185 Union was ultimately found guilty in court of each of the desk appearance tickets issued to them. Furthermore, Bongiorni testified that he himself observed that the temperature was too low in 44 Franklin Avenue, and that there was a crack in the wall at 185 Union Avenue, before issuing violations for these problems.

With respect to Defendant Cacciola, it is equally difficult to find that his issuance of code violations was objectively unreasonable. He testified that he issued violations for grass maintenance and litter

after personally observing that the grass had grown too long and that there was no garbage enclosure. And, notably, the Plaintiffs have offered no evidence to suggest that the violations issued to them were unwarranted in light of the conditions on their properties. In contrast, Michael Moran indicated that he had no information that the grass on his property was actually lower than six inches.

Having found that the conduct of defendants Cacciola and Bongiorni was objectively reasonable, the issue becomes whether the Plaintiffs have offered adequate particularized evidence of improper motive to avoid summary judgment. Notably, "a conclusory proffer of an unconstitutional motive should not defeat the motion for summary judgment." *Blue,* 72 F.3d at 1084. The particularized evidence of improper motive may include expressions by the officials involved regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken. *Id.* In this case, the Plaintiffs have offered nothing in the way of facts to support their claim of improper motive.[12] In fact, the evidence in the record suggests otherwise. Defendants Bongiorni and Cacciola both testified that they had given out numerous violations to other residents for problems similar to the ones for which they charged the Plaintiffs. Moreover, their testimony was bolstered by the submission of City

---

**12.** The relevant paragraph of the Plaintiffs' Opposition Brief is indicative of the conclusory nature of their allegations. The paragraph reads: "In the case at bar, it is clear that defendants have violated a clearly established statutory or constitutional right of which a reasonable person would have known. Surely, a reasonable person, utilizing an objective standard, would be expected to realize that citizens cannot be retaliated against based upon the exercise of First Amendment rights. In addition, a reasonable person would have realized that plaintiffs were entitled to due process rights and the right not to be selectively treated for impermissible reasons. As already discussed, plaintiffs respectfully submit that they have sufficiently set forth specific allegations of improper motive, of being singled out or being the victim of highly unusual actions." This does not suffice.

records indicating that many such violations were in fact given to other residents.

Therefore, Defendants Bongiorni and Cacciola are entitled to qualified immunity in this case.

### ii. Absolute Immunity for Ruth Kitchen

■ The Supreme Court has held that local legislators are absolutely immune from suit under § 1983 for their legislative activities. *See Bogan v. Scott–Harris,* 523 U.S. 44, 49, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it. *Id.* at 54, 118 S.Ct. 966. As such, immunity extends to the acts of introducing, voting for, and signing local ordinances. *See id.* at 55, 118 S.Ct. 966. In light of these principles, it is clear that Defendant Ruth Kitchen is entitled to absolute immunity for her actions in introducing and voting for the farm animal ordinance in this case.[13]

### iii. Absolute or Qualified Immunity for Bernis Nelson

■ Defendants argue that Defendant Nelson is entitled to absolute prosecutorial immunity from the claim that she "encouraged and prosecuted summonses" against the Plaintiffs in this case. The court disagrees. Even to the extent that Nelson is entitled to immunity for the prosecution of summonses, she is not entitled to absolute immunity for encouraging the issuance of summonses by others. As discussed above, the issuance of code violations is outside the scope of the Corporation Counsel's powers and it would be inconsistent to grant prosecutorial immunity for the exercise of such functions.

■ In the alternative, Defendants argue that Defendant Nelson is entitled to qualified immunity. The court agrees. First, in light of the record in this case, a jury could not reasonably find that Nelson directed other officials to issue violations and thus acted unreasonably. Defendants Bongiorni, Cacciola and Nelson herself have testified she did not direct anyone to issue violations, and this testimony is rebutted only by conclusory accusations by the Plaintiffs, who could not have personally witnessed such directions being given. Second, Plaintiffs have provided no particularized facts to suggest that Nelson had any improper motive. Therefore, Defendant Nelson is entitled to qualified immunity for any alleged role in encouraging the issuance of violations.

Furthermore, Defendant Nelson is entitled to absolute immunity for her participation in the drafting of the farm animal ordinance. Officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions. *See Supreme Court of Va. v. Consumers Union of United States, Inc.,* 446 U.S. 719, 731–734, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980).

### III. Conclusion

Accordingly, the court orders the following:

    a. Defendants' motion to dismiss the Moriaritys' § 1983 claim is DENIED. However, the individual defendants are immune from this claim.

---

13. Plaintiffs cite a series of cases holding that legislators acting in an administrative capacity are not absolutely immune for their conduct. That may be true, but there is nothing in the record to suggest that Defendant Kitchen's actions were anything but legislative in nature.

b. Plaintiffs Souci Farms, Sally Moran, Michael Moran, Michelle Moriarity and James Moriarity are barred from arguing that the farm animal ordinance denied them a property right. Plaintiffs 185 Union Avenue, Sally Moran and Michael Moran are barred from contesting their guilt with respect to the desk appearances.

c. Defendant City is not liable with respect to the criminal instruments and other code violations involving the Plaintiffs' properties.

d. Defendants' summary judgment motion is GRANTED with respect to Plaintiffs' First Amendment retaliation and Due process claims. Defendants' summary judgment motion with respect to Plaintiffs' Equal Protection claim is DENIED.

e. Plaintiffs' § 1985 claim is dismissed.

f. Defendants Robert Bongiorni and Karl Cacciola are entitled to qualified immunity. Defendant Ruth Kitchen is entitled to absolute immunity. Defendant Bernis Nelson is entitled to qualified immunity with respect to her alleged activities involving the issuance of violations, and absolute immunity with respect to her alleged involvement in the farm animal ordinance.

It is so ordered.